**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                    Case No. 3:16-cr-93-J-32JRK

CORRINE BROWN

---

### ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL

This case was tried from April 24 to May 8, 2017, with both sides getting a full opportunity to present their evidence and arguments.   The jury then began deliberating.  On May 10, following a communication from another juror and with both parties' agreement, I questioned Juror No. 13 who told me that from the beginning of deliberations, he had "received information as to what [he] was told to do" from his "Father in Heaven" and that "the Holy Spirit" "told [him] that Corrine Brown was not guilty on all charges."  Doc. 182 at Tr. 41, 51.[1]  Recognizing the sensitivities when religious beliefs are involved, I nevertheless determined that this juror must be excused.  I would have reached the same conclusion had the juror said that the Holy Spirit had told him that Corrine Brown was guilty on all charges.

Under the rules, we could have proceeded with eleven jurors.  However, both sides asked me to seat an alternate so I did.  I received an individual commitment from each juror that they would start deliberations anew.  The newly composed twelve

---

[1]"Tr." cites are to the trial transcript.

member jury then deliberated for more than eleven hours over two days before returning a verdict of guilty on some counts and not guilty on others, bespeaking careful consideration of the evidence. Then, each juror stood up in open court and announced that this was their "true verdict."

Corrine Brown received a fair trial and a considered verdict from a properly constituted jury. Her motion for new trial is denied. A full discussion follows.

## I.   The Pertinent Facts

Former Congresswoman Corrine Brown and a co-defendant, who eventually pled guilty and testified against her, were charged in a twenty-four count indictment alleging a conspiracy to commit mail and wire fraud, aiding and abetting mail and wire fraud, and, as to Corrine Brown only, additional financial disclosure and income tax-related charges.

Jury selection began on April 24, 2017 with a pool of over 100 prospective jurors coming in over the next two days. On the morning of April 26, United States Magistrate Judge James R. Klindt, who selected the jury by the parties' consent, seated a jury of twelve with four alternates. All those seated on the jury agreed during questioning that they had no "political, religious, or moral beliefs that would preclude [them] from serving as a fair, impartial juror in this case." Doc. 169 at Tr. 189. Each juror also agreed that they had no "religious or moral beliefs" that would preclude them from "sitting in judgment of another person." Id. at Tr. 190. Once the jury was

selected, each juror swore to render a true verdict according to the law, evidence and instructions of the Court.  Doc. 171 at Tr. 44-45.  The Court then instructed the jury that their task was to decide the case based solely on the evidence they heard in the courtroom and to ignore all outside opinions.  Id. at Tr. 50.  As the Court then reiterated, "If you didn't get it in this courtroom, you shouldn't have it" because "our whole system depends upon the fact that the case is decided in this courtroom on the evidence in this courtroom and nothing else."  Id. at Tr. 50-51.  The Court advised the members of the jury that "every single one of you has [the] responsibility to make sure that that's what happens."  Id. at Tr. 51.

During eight days of trial, the jury heard testimony from 41 witnesses, including the defendant, and the Court admitted 371 exhibits into evidence.  After closing arguments, the Court instructed the jury on the law, including instructions that their decision "must be based only on the evidence presented during the trial" and that the jury "must follow the law as I explain it– even if you do not agree with the law– and you must follow all of my instructions as a whole," and that they "must not single out or disregard any of the Court's instructions on the law."  Doc. 180 at Tr. 124.  The jurors were also instructed that they each must decide the case for themselves, "but only after fully considering the evidence with the other jurors," that they "must discuss the case with one another and try to reach an agreement," and that they should not hesitate to reexamine their opinions and change their mind if they become convinced

that they were wrong. Id. at Tr. 143-44. The four alternates were dismissed but were kept together in the courthouse under orders that they continue to follow all the Court's instructions, including that they not discuss the case.

Deliberations began on Monday afternoon, May 8. At 5:00 p.m. the jury retired for the evening, returning the following day where they deliberated without incident from 9:00 a.m. to 5:00 p.m. Later that evening, Juror No. 8 (who was not the foreperson) called the courtroom deputy on her cell phone to report that she and other jurors had "concerns" about Juror No. 13 who, from the beginning of their deliberations, was talking about "Higher Beings" and mentioned the name of the defendant.[2] The courtroom deputy immediately advised Juror No. 8 that she could not discuss the matter with her but would report it to the Judge, which she then did. I communicated with counsel overnight via email, we shared relevant case law,[3] and I convened a hearing at 8:15 a.m. the following morning (Wednesday, May 10) to determine how to proceed.

---

[2]The courtroom deputy provides all jurors with her cell phone number so they can contact her regarding off-hours events such as illness or an accident that may prevent them from reporting for duty as scheduled.

[3]United States v. Abbell, 271 F.3d 1286 (11th Cir. 2001); United States v. Augustin, 661 F.3d 1105 (11th Cir. 2011); United States v. Godwin, 765 F.3d 1306 (11th Cir. 2014); United States v. Geffrard, 87 F.3d 448 (11th Cir. 1996); United States v. Burrous, 147 F.3d 111 (2d Cir. 1998); United States v. Decoud, 456 F.3d 996 (9th Cir. 2006).

After some discussion, both sides were firm that the Court needed to question Juror No. 8 in camera to gather more information.  The Court agreed.

Members of the public and media were cleared from the courtroom and Juror No. 8 was brought in.[4]  Before making any inquiry, the Court advised her:

> [B]efore I ask you any questions or talk to you, I want to make sure that you know that I am not asking you to, nor should you, state or reveal in anything you say your own opinions or positions about any of the deliberations that you've been having or any of the issues in this case, nor should you disclose or discuss the opinions of any of the other jurors about any of the deliberations that have gone on.  So I want to be clear about that.

Doc. 182 at Tr. 21.  The Court then asked Juror No. 8 to share her concerns as she had recounted them the previous evening, "without talking about the deliberations or anybody else's views or your views."  Id.  Juror No. 8 then offered to give the Court a letter she had written in case she did not receive further communication following her phone call the previous evening.  The Court accepted her letter and shared it with the parties.  The letter, marked as Court Exhibit 1, states:

> Your Honor
>
> With all due respect, I'm a little concerned about a statement made by Juror #13 when we began deliberation.

---

[4] Counsel, the defendant, and court personnel remained in the courtroom.  The remaining seated jurors were held in the Jury Assembly Room; the alternates were brought to their own location in the courthouse so as not to mingle with the seated jurors.  While the Court's inquiry was conducted in camera, the Court later unsealed the transcript of the in camera proceedings.  See Docs. 139, 142, 182.

He said "A Higher Being told me Corrine Brown was Not Guilty on all charges". He later went on to say he "trusted the Holy Ghost". We all asked that he base his verdict on the evidence provided, the testimony of the witnesses and the laws of the United States court. Other members of the Jury share my concern.

Thank you,

[name redacted], Juror # 8

Upon further questioning, Juror No. 8 stated that Juror No. 13 made his first comment when the jury "first went into deliberation" and made his second comment a few hours later the same day; Juror No. 13 had not expressed that view again; his comments were not interfering with Juror No. 8's ability to deliberate; and Juror No. 13 appeared to be deliberating. Doc. 182 at Tr. 23-24. The Court solicited questions from counsel, which resulted in Juror No. 8 explaining that while Juror No. 13's comments only occurred on the first day, other jurors had subsequently expressed concern in Juror No. 13's presence that his comments might affect his decision. Juror No. 8 also advised that she was acting on her own initiative and the other jurors did not know she had come forward. Id. at Tr. 23-26. The Court then excused Juror No. 8 with the admonition that she not share with the other jurors the discussion she had just had with the Court, to which she agreed.

The government commented that Juror No. 13's statements contradicted his agreement during voir dire that he would set aside any religious or philosophical beliefs and further expressed concern that while Juror No. 8 said his comments were

not affecting her ability to deliberate, it could be affecting the overall deliberations, particularly since Juror No. 13's comments came at the beginning of deliberations. Counsel for the government suggested questioning the foreperson.  Counsel for the defendant suggested doing nothing further in light of Juror No. 8's statement that her own deliberations were not affected and the lack of evidence that Juror No. 13 was refusing to follow the Court's instructions, but acknowledged that if Juror No. 13 was committed to a particular result notwithstanding the evidence, it would be a concern. Id. at Tr. 28-30.   The Court noted the fine line between persons praying for guidance, which is to be respected, and persons being prevented by a religious view from making a determination based on the evidence.  The Court then asked the parties whether Juror No. 13 should be questioned, commenting that if Juror No. 8 had reported that Juror No. 13 told the jury that the Holy Spirit told him Corrine Brown was guilty of all charges, her counsel likely would want further inquiry.  Her counsel agreed that Juror No. 13 could be questioned to see if he could assure the Court that he would follow the law.  Id. at Tr. 30-33.

The Court determined to question Juror No. 13.  The parties agreed the Court should first ask him general questions such as whether he was able to follow the instructions given in voir dire about setting aside any religious or moral views that would prevent a decision based on the evidence, and to follow up asking more specific questions, such as whether he had shared contrary views with the jury.  Juror

7

No. 13 was then brought in and told the Court that he remembered the Court asking about political, religious or moral beliefs that would preclude service as a fair and impartial juror and he maintained the response he had previously given that he could serve.  Juror No. 13 said he was not having any difficulty with any religious or moral beliefs interfering with his ability to decide the case on the facts presented and the law as instructed.  Id. at Tr. 39.  The Court then asked if he considered himself to have been deliberating with the other jurors to which he responded that they were going over the individual charges.  The Court interrupted, instructing Juror No. 13 not to reveal anything about the deliberations.  Juror No. 13 responded that he had been "following and listening to what has been presented and making a determination from that, as to what I think and believe."  Id. at Tr. 40.  The Court then asked Juror No. 13 whether he had made any statements to his fellow jurors to the effect that a higher being was guiding him on these decisions or that he was trusting in his religion as a basis for making his decisions.  Id.  Juror No. 13 responded: "I did, yes."  Id.  The following colloquy then took place:

> The Court:          Okay.  Can you tell me, as best you can, what you said?
>
> Juror No. 13:       Absolutely.  I told them that in all of this, in listening to all the information, taking it all down, I listen for the truth, and I know the truth when the truth is spoken.  So I expressed that to them, and how I came to that conclusion.

8

| The Court: | Okay. And in doing so, have you invoked a higher power or a higher being? I mean, have you used those terms to them in expressing yourself? |
|---|---|
| Juror No. 13: | Absolutely. I told- - I told them that- - that I prayed about this, I have looked at the information, and that I received information as to what I was told to do in relation to what I heard here today- - or this past two weeks. |
| The Court: | Sure. When you say you received information, from what source? I mean, are you saying you received information from- - |
| Juror No. 13: | My Father in Heaven. |
| The Court: | Okay. Is it a fair statement- -  I don't want to put words in your mouth. But are you saying that you have prayed about this and that you have received guidance from the Father in Heaven about how you should proceed? |
| Juror No. 13: | Since we've been here, sir. |

Id. at Tr. 40-41.

The Court then asked Juror No. 13 again whether he maintained his view that he had no religious or moral beliefs that precluded him from serving as a fair and impartial juror or that would preclude him from sitting in judgment of another, and

9

whether he was able to base his decision only on the evidence presented during the trial and whether he was following the law as the Court explained it.  Id. at Tr. 41-42. Juror No. 13 responded that he was doing that.   When asked if he saw any inconsistency between that position and his stated religious views, Juror No. 13 responded that he did not, elaborating:  "I followed all the things that you presented. My religious beliefs are going by the testimonies of people given here, which I believe that's what we're supposed to do, and then render a decision on those testimonies, and the evidence presented in the room."  Id. at Tr. 42.

Counsel did not have any additional suggested questions and Juror No. 13 was temporarily excused from the courtroom while the Court discussed the matter with the parties.  The government's view was that although Juror No. 13 maintained that he was following the Court's instructions, he also said he was guided by what he believed a deity told him to do, which was inconsistent with following the law and that, following more record development, he would likely be dismissed and replaced with an alternate.  Counsel for the defendant disagreed, arguing that Juror No. 13 said he was following the law, which was not inconsistent with a person of deep religious faith seeking guidance from God.  Further, Juror No. 8 had reported that her deliberations were not affected.  The defense therefore argued that if Juror No. 13 was removed it would be "simply because he is a man of faith."  Id. at Tr. 46.

The Court suggested that it might find clarity by asking Juror No. 13 the direct question posed by Juror No. 8's letter:  Did he tell his fellow jurors that a higher being told him Corrine Brown was not guilty on all charges?   Otherwise, the Court explained, it would be difficult to differentiate between praying for guidance, and being told what to do by a higher authority.  Neither party objected to the Court's suggestion.

Juror No. 13 returned to the courtroom and the following colloquy occurred:

The Court:  I want you to understand I am not criticizing you or saying you did anything wrong.  We're just trying to figure some things out here.

So what I want to ask you is a fairly direct question, and that is this:  Did you ever say to your fellow jurors or to a fellow juror during your - - during the time that y'all worked together, when the 12 started, something to this effect, A higher being told me that Corrine Brown was not guilty on all charges?  Did you say something like that?  Did you say that or something like that to any of your fellow jurors?

Juror No. 13:  When we were giving why we were - - insight, as far as not guilty or whatever for the first charge, yes.

The Court:  Did you say the words, A higher being told me Corrine Brown was not guilty on all charges?

11

| Juror No. 13: | No.  I said the Holy Spirit told me that. |
|---|---|
| The Court: | Okay.   And you- - and I don't want to get into your deliberations.  But at what point in the deliberations was that?   Was it at the beginning? Was it early in the deliberations?  When was it? |
| Juror No. 13: | I mentioned it in the very beginning when we were on the first charge. |

Id. at Tr. 50-51.  The lawyers convened at sidebar, with the government advising to stop the questioning and the defense suggesting that the Court ask if Juror No. 13 was able to follow the Court's instructions and whether he had been doing so.  But the Court declined to ask that, stating it had already done so.   Juror No. 13 was temporarily excused.

The government argued that, given Juror No. 13's affirmative response, it was unnecessary to question any other jurors and he should be dismissed and replaced with an alternate.   The defense contended this was "nothing more than a circumstance of someone who's a deep man of faith commenting and saying that something he believed beforehand had been reaffirmed by the evidence that he saw." Id. at Tr. 54.  It was not, in counsel's view, a circumstance where a juror was planning to vote to acquit no matter what.  Id. at 55.

The Court took a brief recess and then announced its decision to dismiss Juror No. 13. In doing so, the Court recounted the legal standard from the Eleventh Circuit, which permits dismissal once deliberations have begun only for good cause, which includes a juror's refusal to follow the law or to follow the Court's instructions. The Court explained that because of the danger that a dissenting juror might be excused simply because he disagreed with other jurors, the Court must only dismiss a deliberating juror when no substantial possibility exists that the juror is basing his decision on the sufficiency of the evidence. The Court recognized that maintaining sincerely held religious beliefs and praying for guidance are perfectly appropriate and not grounds to dismiss a juror, and that Juror No. 13 said he felt he was following the Court's instructions. But while the Court found Juror No. 13 to be very earnest and sincere, and that Juror No. 13 likely believed that he was trying to following the Court's instructions, the Court further observed that by making statements to his fellow jurors at the beginning of deliberations that he was receiving information from a higher authority who was directing him as to what verdict he should reach, he was acting inconsistently with the Court's instruction that the case be decided solely on the law and the evidence in the case. Id. at Tr. 56-62.

In judging Juror No. 13's credibility, the Court noted that Juror No. 13 was initially "hesitant" to explain how his religious views came to the fore during deliberations, but as questioning continued, he eventually confirmed the actual

statement brought to the Court's attention by Juror No. 8- - that being that the Holy Spirit "told him" that the defendant was not guilty on all charges.  Id. at Tr. 60.  The Court found that Juror No. 13 not only admitted making the statement, but appeared to continue to believe that a higher power was telling him how he ought to proceed in the deliberations.   Id. at Tr. 61.   The Court found his expressed views to be inconsistent with the duties of a sworn juror because he was not able to deliberate in a way that reaches decision based only on the evidence adduced at trial and the law and instructions given by the Court.  Id.

In announcing its decision, the Court carefully drew a distinction between a juror who is praying for guidance or seeking inspiration, from this situation where the juror actually stated that an outside source "told him" that the defendant was not guilty of all charges.  Id. at Tr. 60.  As the Court then stated and now reiterates, "I think that's just an expression that's a bridge too far, consistent with jury service as we know it."  Id.  The Court therefore found "no substantial possibility that [Juror No. 13] [was] able to base his decision only on the evidence and the law as the court gave it to him in the instructions and that he [was] using external forces to bring to bear on his decision-making in a way that's inconsistent with his jury service and his oath."  Id. at Tr. 61.  The Court held that "based on the evidence before [it]," it made that finding "beyond a reasonable doubt."  Id.

14

While the defendant disagreed with the Court's decision to dismiss Juror No. 13 (and counsel put his objections on the record), both parties agreed that the Court should then seat an alternate instead of proceeding with eleven jurors. The first alternate joined the remaining eleven jurors in open court where the Court advised them that Juror No. 13 had been excused from service. The Court instructed the jury that they "should not speculate as to why Juror No. 13 was excused, nor should [they] discuss or reference any statements that Juror No. 13 may have made." Id. at Tr. 74. The Court told the jury to "just put Juror No. 13 out of your mind" and asked the jury to accept that the Court found a good reason to excuse him. Id. The Court then explained that an alternate would take his place but this meant the jury was required to begin deliberations anew, to wipe their minds of all discussions, tentative verdicts, decisions or opinions and to begin afresh. The Court asked each juror individually whether they could do this and each stated that they would. Id. at Tr. 76-77. The jury then retired to deliberate at 10:30 a.m. on Wednesday, May 10.

Later that morning, the jury had its first question, which the Court answered with the parties' agreement by referring them to particular jury instructions. That afternoon, the jury had another question, which the Court again answered with the parties' agreement. They retired for the evening at 5:00 p.m. and returned the following morning, May 11, at 9:00 a.m. to resume their deliberations. At 11:00, the jury asked to see a transcript of a witness's testimony. By approximately 1:30 p.m.,

15

the transcript was prepared, but just as the Court was reconvening, the jury announced it had reached a verdict.  Thus, on May 11, after more than eleven hours of fresh deliberation, the jury had completed its task. Their verdict, announced in open court, was that defendant Corrine Brown was guilty of eighteen counts and not guilty of four counts of the indictment.   Each juror stood up in court and confirmed that this was their true verdict.

Corrine Brown has now filed this motion for new trial, arguing that the Court erred in dismissing Juror No. 13, and that the interests of justice require a new trial.[5] See Doc. 187.  The government responded in opposition (Doc. 190) and defendant filed a reply.  See Doc. 196.  The Court heard argument on the motion on August 7, 2017; the record of those proceedings is incorporated by reference.

## II.      The Law and the Court's Decision

Federal Rule of Criminal Procedure 33 provides that, "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Though the "ultimate decision" to grant a new trial falls within the Court's "sound discretion," United States v. Albury, 782 F.3d 1285, 1295 (11th Cir. 2015) (citation omitted), "[m]otions for a new trial . . . are highly disfavored in the Eleventh Circuit and should be granted only with great caution."

---

[5]Defendant also filed a motion for judgment of acquittal (Doc. 188) which is addressed by separate order.  (Doc. 199).

United States v. Scrushy, 721 F.3d 1288, 1304 (11th Cir. 2013) (second alteration in original) (quoting United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006)). "[T]he defendant bears the burden of justifying a new trial." Campa, 459 F.3d at 1151 (quotation and citation omitted).

Once a jury has begun their deliberations, the Court may only excuse a juror "for good cause." United States v. Godwin, 765 F.3d 1306, 1316 (11th Cir. 2014) (citing Fed. R. Crim. P. 23(b)(3)). Defendant argues the Court's decision to dismiss Juror No. 13 was not supported by good cause and that the reconstituted jury's verdict was therefore not in the interest of justice, warranting a new trial under Rule 33.

Good cause exists to dismiss a juror "when that juror refuses to apply the law or to follow the court's instructions."[6] United States v. Abbell, 271 F.3d 1286, 1302 (11th Cir. 2001) (citing United States v. Geffrard, 87 F.3d 448, 451-52 (11th Cir. 1996)). See also Godwin, 765 F.3d at 1316. However, as explained in Abbell, the Court must guard against the risk that a juror, who other jurors report is not following the law, is instead simply disagreeing with the majority about the merits of the case.

_____

[6]In Abbell, 271 F.3d at 1302, the Court applied the pre-2002 version of Rule 23 which provided for dismissal of a juror upon a finding of "just cause." See Fed. R. Crim. P. 23 advisory committee notes (2002 Amendments) (changing the language of Rule 23 from "just" cause to "the more familiar term" "good" cause, but noting that "[n]o change in substance is intended"). See also United States v. Martinez, 481 F. App'x 604, 608, n.3 (11th Cir. 2012) (commenting that Rule 23's pre-2002 "just" cause standard is no different in substance than the current "good" cause standard).

Abbell, 271 F.3d at 1302.  "Thus, judges must be careful not to dismiss jurors too lightly, even in the face of complaints from a majority of the jury."  Id.  "Because of the danger that a dissenting juror might be excused under the mistaken view that the juror is engaging in impermissible nullification . . . a juror should be excused only when no 'substantial possibility' exists that [he] is basing [his] decision on the sufficiency of the evidence."  Id. (citations omitted).  As the Eleventh Circuit further clarified:  "We mean for this standard to be basically a 'beyond reasonable doubt' standard."  Id.

But the Eleventh Circuit recognized that in making this assessment, the trial court "is uniquely situated to make the credibility determinations that must be made in cases like this one[,] where a juror's motivations and intentions are at issue."  Id. at 1303 (citations omitted).  See also Godwin, 765 F.3d at 1318 (holding district judge applied correct standard in considering "whether there was a substantial possibility that the juror who was removed was merely espousing the view that there was insufficient evidence to convict instead of refusing to follow the court's instructions" and that, with the correct standard in mind, district judge, who "was on the scene" and "viewed the jurors as they described the problem" was "uniquely situated to make the credibility determinations that must be made whenever a juror's motivations and intentions are at issue") (citing Abbell, 271 F.3d at 1302-03) (internal quotations omitted).  However, the Court must also tread lightly so as to avoid "invading the secrecy of the jury's deliberations."  United States v. Augustin, 661 F.3d 1105, 1133

18

(11th Cir. 2011).  District judges are cautioned "to err on the side of too little inquiry as opposed to too much." Id. (quoting Abbell, 271 F.3d at 1304, n.20).

The matter with Juror No. 13 was brought to the Court's attention by Juror No. 8 who contacted the courtroom deputy in the evening of the second day of deliberations.  Though mindful of the need to shield a deliberating jury from undue scrutiny, see, e.g., Augustin, 661 F.3d at 1132-33, after considering other options, bearing in mind that the juror was concerned enough to contact the courtroom deputy at night, and at the request of both parties, I questioned Juror No. 8.  Her responses, coupled with the information provided in her note, revealed that, if she was an accurate reporter of the situation, Juror No. 13 was making statements that likely reflected a decision-making process not in accordance with the law.  Although Juror No. 8 stated that Juror No. 13's comments were not affecting her deliberations, the matter warranted further inquiry both because Juror No. 8 reported that other jurors were concerned, and because his remarks were allegedly made at the beginning of deliberations, before the jurors had had an opportunity to confer and discuss the evidence and the governing law.  While the defendant initially argued that I should not inquire further, she later agreed that I should question Juror No. 13 to insure that he was following the Court's instructions.  Although the government suggested that the Court speak to the foreperson first, I determined it would be less intrusive to question Juror No. 13 directly.

My colloquy with Juror No. 13 revealed him to be sincere and earnest.  Yet, while he reported that he was following the Court's instructions, he readily agreed that he told his fellow jurors at the beginning of their deliberations that he had "received information as to what [he] was told to do in relation to what [he] heard" throughout the trial from his "Father in Heaven."  Doc. 182 at Tr. 41.  And, while he recalled his assurance during voir dire that he did not have religious beliefs that would preclude him from serving as a fair and impartial juror, he nonetheless stated that "the Holy Spirit" "told" him that "Corrine Brown was not guilty on all charges," and further admitted that he shared that information with his fellow jurors at the very beginning of deliberations when discussing the first charge.  Id. at Tr. 51.

"[A] juror is fully entitled to [his] religious beliefs and may espouse them, but in this jury context, where the court's rules– not [the juror's]– apply, it cannot be said that [a] district judge abuse[s] his discretion" by dismissing a juror whose "deeply held religious beliefs" preclude the juror from "reach[ing] a verdict following the judge's instructions as applied to the facts."  Geffrard, 87 F.3d at 452.  I found that to be the case here.  Juror No. 13 had received multiple instructions from the Court on the law and how to evaluate the evidence, yet his religious beliefs compelled him to disregard those instructions and instead follow direction from the "Holy Spirit" to find the defendant "not guilty on all charges."  Moreover, he seemed unaware of the inconsistency, reinforcing my belief that he would be unable to follow the Court's

instructions even if I again directed him to do so.  Thus, his statement that he was following my instructions did not convince me that he was able to do so.  See Augustin, 661 F.3d at 1132 (affirming dismissal of juror whose responses court found to be "incredible"); United States v. Egbuniwe, 969 F.2d 757, 762 (9th Cir. 1992) ("A juror's assurance that he or she can render a fair and impartial verdict is not dispositive.") (citing Murphy v. Florida, 421 U.S. 794, 800 (1975)).

Having reached this conclusion, I saw no need to further interfere in the jury's deliberations by questioning any of the other jurors, nor did defendant ask me to (and the government asked me not to).  Cf. Abbell, 271 F.3d at 1304, n.20 (rejecting argument that trial judge's inquiry "tainted the jury" but cautioning trial judges "to be careful about invading the secrecy of the jury's deliberations and to err on the side of too little inquiry as opposed to too much").  Thus, these circumstances were unlike some others in which a juror denied uttering the statements attributed to him, compelling the Court to question other jurors to decide the matter.  See, e.g., Godwin, 765 F.3d at 1315, 1318; Abbell, 271 F.3d at 1303-04; United States v. Kemp, No. CRIM. A. 04-370-02, 2005 WL 1006348 (E.D. Pa. Apr. 28, 2005) (dismissing juror whose responses court found to be "disingenuous" after other eleven jurors reported that she was refusing to consider the evidence or follow the court's instructions), aff'd, 500 F.3d 257, 301-06 (3d Cir. 2007) (citing Abbell, with approval).  Here, Juror No. 13 readily admitted he had uttered the asserted statements; thus, inquiry of the other

jurors was not only unnecessary but potentially disruptive.

Defendant claims Juror No. 13's pronouncement was simply his evaluation of the sufficiency of the evidence, casting him as a potential hold-out juror.  But this is a mischaracterization of the situation.  Juror No. 13 told me he had expressed a conclusion from the beginning of the deliberations and without discussion with his fellow jurors, in violation of the Court's instructions.  While Juror No. 8 said Juror No. 13's remarks did not prevent her from deliberating, his statements necessarily had to impact the overall deliberations because Juror No. 13 was telling his fellow jurors that he was basing his verdict on direction apart from those in the Court's instructions.[7]

It is an important aspect of the trial process that "jurors are observable by each other, and may report inappropriate juror behavior to the court before they render a verdict," which is what Juror No. 8 did.  Tanner v. United States, 483 U.S. 107, 127 (1987).  Juror No. 13 admitted that he announced to his fellow jurors when they began deliberating on the first charge that the Holy Spirit told him that Corrine Brown was not guilty "on all charges."  Doc. 182 at Tr. 51 (emphasis added).  That characterization is what caused Juror No. 8 to bring the matter to the Court's attention and is what (according to Juror No. 8) caused other jurors to be concerned as well.  When Juror No. 13 affirmed this statement upon questioning (and I found that Juror No. 13 would

---

[7]Juror No. 8 was concerned enough that she contacted the courtroom deputy by phone at night, and followed up with a letter.  In both of those communications she mentioned that other jurors were concerned about Juror No. 13 as well.

continue in the same vein if permitted to remain), I determined beyond a reasonable doubt that there was no substantial possibility that he could base his decision on the sufficiency of the evidence and the Court's instructions.

Contrary to defendant's argument, I am not at all suggesting that persons of religious faith are unsuitable to serve as jurors.  Indeed, jurors are expected to bring their life experiences with them when called to sit in judgment of their peers.  Head v. Hargrave, 105 U.S. 45, 49 (1881).  For many, that includes deeply held religious beliefs.  But what the law requires is that each juror "lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Murphy v. Florida, 421 U.S. 794, 800 (1975).  See United States v. DeJesus, 347 F.3d 500, 510-11 (3d Cir. 2003) (explaining trial court must distinguish between "religious affiliation [and] a religion's general tenets" on the one hand "and a specific religious belief" that "would prevent [a juror] from basing his decision on the evidence and instructions, even if the belief had a religious backing") (citing United States v. Stafford, 136 F.3d 1109, 1114 (7th Cir. 1998)); United States v. Salvador, 740 F.2d 752, 755 (9th Cir. 1984) (affirming trial court's decision to declare a mistrial where "'religious inspiration' prevented one juror from considering the evidence").  Had Juror No. 13 simply stated to his fellow jurors that he was praying for guidance during the deliberations, that would not have been problematic (and I doubt Juror No. 8 would have brought it to the Court's attention).  But that's not what happened here.  Juror No.13 announced at the

23

beginning of deliberations that he was following instructions from an outside source, which is not permitted, even when that source derives from one's own religious beliefs.  See, e.g., Geffrard, 87 F.3d at 451-52 (finding "no miscarriage of justice" where a deliberating juror was dismissed after writing a letter to the trial judge explaining, in essence, that her religious beliefs prevented her from sitting in judgment of the defendants, noting that while the juror was "fully entitled to her religious beliefs," the contents of the "letter ma[de] it a certainty that this particular juror could not reach a verdict following the judge's instructions as applied to the facts").[8]

From my observations, Juror No. 13 was not willfully disobeying the Court's instructions.  Rather, he sincerely believed he had received instructions from an outside source before deliberations began about what his verdict should be and failed to appreciate the conflict that presented with the Court's charge.  Moreover, rehabilitation was not an option- - if allowed to remain on the jury, Juror No. 13 would

_____

[8]The concurring opinion in the denial of a petition for rehearing en banc in Robinson v. Polk, 444 F.3d 225 (4th Cir. 2006), upon which defendant heavily relies, is not to the contrary.  Although the underlying decision affirmed that the presence of a Bible in the jury room was permissible (a position in contravention of Eleventh Circuit authority and that of other circuits, see McNair v. Campbell, 416 F.3d 1291, 1307-08 (11th Cir. 2005); Oliver v. Quarterman, 541 F.3d 329, 336-40 (5th Cir. 2008) (surveying cases); United States v. Lara-Ramirez, 519 F.3d 76, 88 (1st Cir. 2008); Coe v. Bell, 161 F.3d 320, 351 (6th Cir. 1998)), Judge Wilkinson, in commenting that those of religious faith do not leave their beliefs at the courthouse door when called for jury service, cautions that those who rely on the Bible's teachings for guidance must only do so personally and must "avoid discussing it or referencing it as a source of authority for decisionmaking." 444 F.3d at 229.  There is no tension between that view and the decision here.

24

have continued in the same mindset.  I could not ignore this and allow him to act in accord with this outside instruction.  See Geffrard, 87 F.3d at 452 (affirming decision to excuse juror after deliberations began, explaining that juror was entitled to her religious beliefs but was required to deliberate following the judge's instructions); Oliver v. Quarterman, 541 F.3d 329, 339 (5th Cir. 2008) (commenting on the "important line" that was crossed when jurors went beyond their own understanding of law and morality as an aid to discussion and instead followed Bible passages to reach a decision); United States v. Thomas, 116 F.3d 606, 616 (2d Cir. 1997) ("A federal judge . . .  may not ignore colorable claims that a juror is acting on the basis of . . . improper considerations.").  Nor would the result be different, of course, if Juror No. 13 told me the Holy Spirit had told him that the defendant was guilty of all charges.[9]

Dismissing a deliberating juror is not done cavalierly.  Quite the opposite.  I dismissed Juror No. 13 only after finding beyond a reasonable doubt that there was no substantial possibility he could base his decision on the Court's instructions and the evidence adduced at trial.  Once I dismissed him, the parties agreed I should replace him with an alternate.  The reconstituted jury agreed to begin their consideration anew, deliberating for more than eleven hours over two days before

---

[9]At oral argument, defendant stated that a juror espousing this view would be due to be excused for failing to accord the defendant the presumption of innocence.  At most, this would just provide an additional reason to dismiss the juror.

reaching a verdict.  During that time, the jury asked two questions about the law (which the Court answered with agreement of counsel) and requested a transcript of one witness's testimony (which the Court was preparing to provide when the jury announced they had reached a verdict).  The verdict the jury returned- - on what was more than sufficient evidence[10]- - finding Corrine Brown guilty of some counts but not others, was obviously a product of consideration and discernment.  Each juror then affirmed in open court that this was their true verdict.

Corrine Brown is entitled to a fair trial with an impartial jury that reaches a verdict in accordance with the law.  That is what she received.

Accordingly, it is hereby

**ORDERED**:

Corrine Brown's motion for a new trial (Doc. 187) is **denied**.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of August, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

---

[10]See the Court's separate Order denying Defendant's Motion for Judgment of Acquittal.  Doc. 199.

26

s.
Copies:

A. Tysen Duva, Esq. (Asst. U.S. Attorney)
Michael Coolican, Esq. (Asst. U.S. Attorney)
Eric G. Olshan, Esq. (Asst. U.S. Attorney)
James W. Smith, III, Esq.
Samuel A. Walker, Esq.
Defendant