# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
   **Appellee,**

**vs.**                                                     **Appeal No. 17-15470**

**CORRINE BROWN,**
   **Appellant.**

_____/

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, I hereby certify that the following

named persons are parties interested in the outcome of this case:

Birk, Edward L. – Counsel for Graham Media Group, Florida, Inc.

Brown, Corrine – Defendant/Appellant

Brown, Shantrel – Movant

CA Florida Holdings, Inc. - Movant

   Conner, Timothy J. – Counsel for CA Florida Holdings, Inc. & Multimedia

Holdings Corporation

Coolican, Michael – Assistant United States Attorney

Cox Media Group Jacksonville – Movant

Corrigan, Hon, Timothy J. – United States District Judge

DeMaggio, Bryan E. – Counsel for Brown, terminated

Duva, Andrew Tysen – Assistant United States Attorney

Fugate, Rachel E. – Counsel for Cox Media Group Jacksonville

Glober, Bonnie Ames – Assistant United States Attorney

Graham Media Group, Florida Inc. – Movant

Handberg, Roger Bernard, III – Assistant United States Attorney

Hass, David L. – Counsel for Brown, terminated

Kachergus, Matthew R. – Counsel for Brown, terminated

Kent, William Mallory – Appellate Counsel for Brown

Klindt, Hon. James R. – United States Magistrate Judge

Mansfield, Jennifer A. – Counsel for Multimedia Holdings Corporation &

CA Florida Holdings, Inc.

Multimedia Holdings Corporation - Movant

NeJame, Mark E. – Counsel for Defendant Brown, terminated

Olshan, Eric – Counsel for DOJ, Public Integrity Section

Robinson, Sue-Ann N. – Counsel for movant, Shantrel Brown

Simmons, Elias – Co-defendant

Simpson, Allison Kirkwood – Counsel for Cox Media Group Jacksonville

Sheppard, William J. – Counsel for Brown, terminated

Smith, Daniel Austin – Counsel for Co-defendant, terminated

Smith, James Wesley, III – Counsel for Defendant Brown

Suarez, Anthony – Counsel for co-defendant

Walker, Samuel A. – Counsel for Brown

White, Elizabeth Louise – Counsel for Brown, terminated

Wilkison, Jesse B. – Counsel for Brown, terminated

Respectfully submitted,

KENT & McFARLAND
ATTORNEYS AT LAW

s/ William Mallory Kent
William Mallory Kent
Florida Bar No. 0260738
24 North Market Street
Suite 300
Jacksonville, FL 32202
(904) 398-8000
(904) 348-3124 FAX
(904) 662-4419 Cell Phone
kent@williamkent.com
COUNSEL FOR BROWN

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
    **Appellee**

**v.**                                                                    **Appeal Number 17-15470**

**CORRINE BROWN,**
    **Appellant**
_____/

### APPELLANT BROWN'S MOTION FOR RELEASE PENDING APPEAL
### (TIME SENSITIVE - DEFENDANT REQUIRED TO SURRENDER
### FOR SERVICE OF SENTENCE JANUARY 29, 2018
### UNLESS THIS COURT RULES OTHERWISE)

Comes now former Congresswoman Corrine Brown ("Congresswoman Brown"), Appellant herein, by her undersigned appellate counsel, William Mallory Kent, and hereby moves for her release on conditions pending appeal, pursuant to Rule 9(b), Federal Rules of Appellate Procedure, subject to the standards set forth in Title 18, U.S.C. § 3143(b)(1).

## FACTS AND PROCEDURAL HISTORY

Congresswoman Brown was first elected to Congress in 1992 and was re-elected continually until 2016 when her Congressional district was gerrymandered in such a way that she faced great difficulty in being re-elected. Then less than two months before the 2016 election, contrary to established Department of Justice policy disfavoring any action that might be viewed as an attempt to influence the outcome

of an election, the Government unsealed an indictment which charged Congresswoman Brown with a conspiracy to commit mail and wire fraud in connection with her promotion of a charity called One Door for Education. The indictment also included charges of tax evasion related to overstated charitable contributions and charges related to alleged false Congressional financial disclosure forms. The indictment, new district lines plus the press coverage of the indictment led to the loss of the Congressional position she had held for twenty-four years.

Congresswoman Brown proceeded to trial by jury. After two full days of deliberations, the jury appeared to be deadlocked, with two jurors, juror number 13 and juror number 3 holding out for not guilty. The jury was ready to report itself deadlocked that evening, but juror number 8 suggested that the jury retire for the evening and return the next morning and then report the deadlock to the Court. Instead of doing this, after retiring for the evening, juror number 8 reported to a member of the court staff that she had concerns about juror number 13. This was reported to United States District Court Judge Timothy Corrigan, who reported it to counsel for Congresswoman Brown and the Government.

Juror number 8 was called before the Court the next morning at the beginning of what would have been the third day of deliberations, May 10, 2017, and questioned about her concern about juror number 13. Juror number 8 had prepared

a short written note which was provided to the Court and marked as Sealed Court

Exhibit 1 for this hearing.  The note stated:

> I'm a little concerned about a statement made by Juror #13 when we
> began deliberation.  He said "A Higher Being told me Corrine Brown
> was Not Guilty on all charges."   He later went on to say he "trusted the
> Holy Ghost."  We all asked that he base his verdict on the evidence
> provided, the testimony of the witnesses and the law of the United States
> court.  Other member of the Jury share my concern.

The following dialogue then took place with juror number 8:

> THE COURT: All right. Counsel, we're having copies made, but --
> but let me -- so, ma'am, let me just ask you this before --
> before we -- before I -- what you wrote in the letter, is that
> the sum and substance of what the issue is that you wanted to
> bring to our attention?

> JUROR: Yes. It was -- I was just concerned about
> those comments.

> THE COURT: Are you -- and when in point of time were
> those comments made? When were those comments made?

> JUROR: The first one was when we first went into
> deliberation.

> THE COURT: Okay.

> JUROR: And the second one, shortly after, maybe
> within a few hours after.

> THE COURT: Has this juror expressed that view again?

> JUROR: No, sir.

THE COURT: To your observation, has that juror been deliberating?

JUROR: Yes.

THE COURT: Is there anything about the situation as it stands right now that's interfering with your ability to deliberate in the way that the court has directed in the instructions?

JUROR: No, sir. Not at all. I was more concerned that it was going to interfere in his ability to do that. . . .

THE COURT: Okay. Ma'am, you said that this comment was made twice. Was the comment similar both times?

JUROR: Yes. And it was -- yes.

THE COURT: Okay. All right. And when was the -- the first comment you said was shortly after deliberations began; is that correct?

JUROR: The first comment is basically right when deliberation began.

THE COURT: And then when in point of time was the second comment?

JUROR: That same day, just maybe a couple of hours after.

THE COURT: And has that comment -- and I think I've asked you this. But has this juror repeated that comment or anything similar to that since then?

JUROR: No, sir, but other jurors have.

-4-

THE COURT: I don't know what you mean by that.

JUROR: Some of the jurors are concerned that that's affecting his -- his decision.

THE COURT: Okay.

[Doc. 182, pp. 23-25]

When asked for response of counsel the Government promptly called for the removal of the juror who believed Congresswoman Brown was not guilty.

The defense took the position that based on what was before the Court there was no indication that juror number 13 was not fulfilling his duties - he was deliberating and not interfering with the deliberations of the other jurors - and that there was nothing further that needed to be done. [Doc. 182, p. 30]

> I think based on the limited information that we have right now, I don't see that there is any indication that this juror is not fulfilling his responsibilities for deliberating. . . . [M]y reading of the cases is, unless there is some evidence that the juror is going to disregard the instructions of the court and is going to abide by some other rules or consider things outside of the evidence introduced in the court, I don't see that there's a basis, really, for us to move beyond what we have at this point.

[Doc. 182, p. 30-31]

Despite the defense objection, the Court decided to inquire of juror number 13. The Court decided to start the juror inquiry with a reiteration of the voir dire question whether the juror had any political, religious, or moral beliefs that would preclude

-5-

you serving as a fair juror in the case.

> THE COURT: And then -- and then take it from there. Have you
> expressed any religious or moral beliefs that are precluding you or
> hindering you in arriving at a fair decision based on the evidence and the
> law, and then, depending on those answers, maybe getting more
> specific: Have you expressed to any other jurors any religious beliefs
> that might interfere? And see where it goes from there. I think that's how
> I'm going to handle it.

[Doc. 182, p. 38]

> Juror number 13 was called in and the following dialogue took place:

> THE COURT: Do you remember back when you were selected for the
> jury that one of the questions that Judge Klindt asked you was
> whether you had any political, religious, or moral beliefs that
> would preclude you from serving as a fair and impartial juror
> in this case?
> Do you remember that question?

> JUROR: I do.

> THE COURT: Okay. And I assume at that time you
> answered that question no, is that right, that you did not --

> JUROR: That is correct.

> THE COURT: Okay. And is that -- is that still the
> case? Are you having any difficulties with any religious or
> moral beliefs that are, at this point, bearing on or
> interfering with your ability to decide the case on the facts
> presented and on the law as I gave it to you in the
> instructions?

> JUROR: No, sir.

-6-

THE COURT: Okay. Do you consider yourself to have
been deliberating with your other jurors according to the law
and the instructions that the court gave to you before you went
in to deliberate?

JUROR: We have been going over all the individual
numbers, as far as --

THE COURT: Yeah, I don't want to hear anything about
the deliberations.

JUROR: Yes, sir.

THE COURT: But I'm just asking you: Are you -- do
you consider yourself to be following the court's instructions,
in terms of the law and how you go about what you're doing,
free from any influence of religion or political or moral
beliefs?

Are you able to do that? Have you been doing that?

JUROR: I've been following -- I've been following
and listening to what has been presented and making a
determination from that, as to what I think and believe.

THE COURT: Okay. That's fine. So let me get a
little more specific with you. Have you expressed to any of
your fellow jurors any religious sentiment, to the effect that
a higher being is telling you how -- is guiding you on these --
on these decisions, or that you are trusting in your religion
to -- to base your decisions on?
Have you made any -- can you think of any kind of
statements that you may have made to any of your fellow jurors
along those lines?

JUROR: I did, yes.

-7-

THE COURT: Okay. Can you tell me, as best you can, what you said?

JUROR: Absolutely. I told them that in all of this, in listening to all the information, taking it all down, I listen for the truth, and I know the truth when the truth is spoken. So I expressed that to them, and how I came to that conclusion.

THE COURT: Okay. And in doing so, have you invoked a higher power or a higher being? I mean, have you used those terms to them in expressing yourself?

JUROR: Absolutely. I told -- I told them that -- that I prayed about this, I have looked at the information, and that I received information as to what I was told to do in relation to what I heard here today -- or this past two weeks.

THE COURT: Sure. When you say you received information, from what source? I mean, are you saying you received information from --

JUROR: My Father in Heaven.

THE COURT: Okay. Is it a fair statement -- I don't want to put words in your mouth. But are you saying that you have prayed about this and that you have received guidance from the Father in Heaven about how you should proceed?

JUROR: Since we've been here, sir.

THE COURT: Do you view that in any way -- as you know, when I instructed you, I, as I do for -- for all juries -- you had told Judge Klindt that you had no religious or any -- you did not have any religious or moral beliefs that would preclude you from serving as a fair and impartial juror, nor did you have any religious or moral beliefs that would

-8-

preclude you from sitting in judgment of another person. So you told Judge Klindt that.
And then you also -- of course, you heard my instruction, where you have to base your decision only on the evidence presented during the trial and follow the law as I explained it.
Do you feel that you have been doing that?

JUROR: Yes, sir, I do.

THE COURT: Do you feel that there is any inconsistency in the prayer that you've had or the guidance you're receiving and your duty to base your decision on the evidence and the law?

JUROR: You said a few -- you said a few things. Repeat, please.

THE COURT: Do you feel that there's any religious tension, or is your religion and your obvious sincere religious beliefs -- do you believe it at all to be interfering with or impeding your ability to base your decision solely on the evidence in the case and following the law that I've explained to you?

JUROR: No, sir. I followed all the things that you presented. My religious beliefs are going by the testimonies of people given here, which I believe that's what we're supposed to do, and then render a decision on those testimonies, and the evidence presented in the room.

[Doc. 182, pp. 39-42]

After the juror was excused the defense argued:

I can understand the concern that the court would have here with the statement about receiving guidance. I did not hear this juror say,

-9-

however, that he was going to disregard the court's instructions, that he was receiving evidence, or a directive what to do. I think a fair reading here -- what may have happened is that, as a person of deep faith, and perhaps like many people with deep faith, has prayed for clarity, the ability to be fair, the ability to be calm, but I did not hear this juror say, I came in with a view given to me by God, and I'm going to go with that, I'm going to follow God no matter what.

My concern would be that -- and I'm not in any way, shape, form, or fashion suggesting that the court would do this. I want to be clear when I say this. But I think someone who has a deeply held religious belief of faith sometimes expresses a request for guidance from God to do the right thing under the rules, whatever they may be.

That's why we have witnesses who are sworn to tell the truth. That's why jurors take an oath to fulfill their duty. And so I think it would be an easy case if you had someone come in here and say, Yes, the evidence is overwhelming for one particular verdict, but, because God gave me a duty and a task beforehand, I'm going to do that regardless of what the evidence shows.

I don't think a fair reading of what this juror said shows that, and that you have someone whose faith guides him when he has to make certain decisions. He has said the most important, I think, relevant thing, which is that his decision is based upon what he has heard, the testimony, and the deliberations. And I think when you combine that with the fact that the juror, who initially brought it to the attention of the court, has said that deliberations are progressing, it's not affecting her -- I think what you have is perhaps a juror who just, in an abundance of caution, brought this to the attention of the court. And it could be -- and I know I'm speculating now and getting out here on a limb.

Sometimes people who are not of faith have some concern and skepticism about statements that are made by people who are deeply faith-driven. So I would just be concerned about any potential action that might remove this juror simply because he is a man of faith.

-10-

I think it is possible to be a fair and impartial juror and also be someone who believes that God expects you to be just and fair and follow the laws as instructed by the judge.

That's all I have, Your Honor.

[Doc. 182, p. 44-46]

The Court brought juror number 13 back in and asked the following:

THE COURT: So what I want to ask you is a fairly direct question, and that is this: Did you ever say to your fellow jurors or to a fellow juror during your -- during the time that y'all worked together, when the 12 started, something to this effect, A higher being told me that Corrine Brown was not guilty on all charges? Did you say something like that? Did you say that or something like that to any of your fellow jurors?

JUROR: When we were giving why we were -- insight, as far as not guilty or whatever for the first charge, yes.

THE COURT: Did you say the words, A higher being told me that Corrine Brown was not guilty on all charges?

JUROR: No. I said the Holy Spirit told me that.

THE COURT: Okay. And you -- and I don't want to get into your deliberations. But at what point in the deliberations was that? Was it the beginning? Was it early in the deliberations? When was it?

JUROR: I mentioned it in the very beginning when we were on the first charge.

[Doc. 182, pp. 50-51]

Over defense objection the Court removed the hold out juror explaining why

he did so as follows:

-11-

In this case, Juror No. 13, very earnest, very sincere, I'm sure believes that he is trying to follow the court's instructions, I'm sure believes that he is rendering proper jury service, but, upon inquiry and observing Juror No. 13, there is no question that he has made statements  that he is, quote, receiving information from a higher authority as part of his deliberative process, and in response to the court's direct inquiry as to whether he had said to other jurors, quote, A higher being told me Corrine Brown was not guilty on all charges, closed quote, Juror No. 13 said that he -- what he actually said was that the Holy Ghost or the Holy Spirit told me Corrine Brown was not guilty on all charges.

And a juror who makes that statement to other jurors and introduces that concept into the deliberations, especially -- anytime, but this happened to be very early in the deliberations, is a juror that is injecting religious beliefs that are inconsistent with the instructions of the court, that this case be decided solely on the law as the court gave it to the jury and the evidence in the case.

Because, by definition, it's not that the person is praying for guidance so that the person can be enlightened, it's that the higher being -- or the Holy Spirit is directing or telling the person what disposition of the charges should be made.

And based upon my reading of the case law in other cases where religious beliefs have caused a juror to be struck, this statement by the juror, which he forthrightly admitted to, and which was accurately, apparently, recounted by Juror No. 8, who brought this to our attention, is a disqualifying statement.

And -- and it appears to the court, looking and judging the credibility of Juror No. 13, that he was hesitant at first to explain to me how his religious views have come to the fore during deliberations.

But as we progressed and as he told me he received information from a higher source, and then as he later confirmed the actual statement that the Holy Spirit told him that Ms. Brown was not guilty on all charges, that -- that he has expressed views and holds views that I think are

-12-

inconsistent with his sworn duty as a juror in this case, because he's not able to deliberate in a way that follows the law and the instructions that the court gave to him.

I want to be very clear that I am drawing a distinction between someone who's on a jury who is religious and who is praying for guidance or seeking inspiration, or whatever mode that person uses to try to come to a proper decision, from this situation, where the juror is actually saying that an outside force, that is, a higher being, a Holy Spirit, told him that Ms. Brown was not guilty on those charges. And I think that's just an expression that's a bridge too far, consistent with jury service as we know it.

I recognize that whenever you're in the area of religious belief, and -- and people who have different ways of expressing their religious beliefs, that you're in territory that's difficult to navigate.

But in my view, the record is clear, and that not only did Juror No. 13 make this statement, but it appears that he continues to believe that he is being told by a higher power how he ought to proceed in these deliberations, and he has shared that with the other jurors, which, again, is essentially a violation, not a -- not a willful violation by Juror No. 13, but a violation of the court's instructions to base the decision only on the law and the facts that were adduced at trial, and in accordance with the court's instructions.

Therefore, it is the court's decision that Juror No. 13 will be excused for good cause under Rule 23(b)(3) and the authority of *U.S. versus Godwin*, 765 F.3d 1306; *U.S. versus Abbell*, 271 F.3d 1286.

I am making a finding -- and let me make the proper finding here so that there's no doubt about it -- that this juror is being excused because the court is finding no substantial possibility that he is able to base his decision only on the evidence and the law as the court gave it to him in the instructions and that he is using external forces to bring to bear on his decision-making in a way that's inconsistent with his jury service and his oath.

-13-

And I find that -- I make that finding that -- based on the evidence before me, that that finding is made beyond a reasonable doubt.

And I'm relying -- of course, that's the standard given to me in *U.S. versus Abbell*, 271 F.3d 1286, at page 1302. And it's stated in other Eleventh Circuit cases that we've been relying on as well. So the court does make that finding. I will be excusing Juror No. 13 for cause.

[Doc. 182, pp. 58-62]

The Court succinctly summarized his finding to the juror himself as follows:

THE COURT: Sir, I am -- I'm going to relieve you of your duties as a juror in this case. And I am doing so because of the expressions you made regarding your receiving guidance from a higher power as to how you ought to proceed in this matter.

[Doc. 182, p. 87]

An alternate juror was substituted and the reconstituted jury later returned a guilty verdict on all but four counts. Congresswoman Brown filed a motion for new trial raising this single issue, argument was heard, and it was denied. Congresswoman Brown was sentenced to five years imprisonment. A timely notice of appeal was filed followed by a motion for release pending appeal raising the single issue presented herein, whether the trial court denied Congresswoman Brown a fair trial in dismissing juror number 13.

The Government and District Court agreed that Congresswoman Brown was neither a risk of flight nor a danger to the community but denied release pending

-14-

appeal based solely on its conclusion that the juror dismissal issue does not present a substantial question for appeal.  Congresswoman Brown respectfully urges this Court to find that the juror dismissal issue is a substantial question sufficient to justify release pending appeal.

## RELEASE PENDING APPEAL

Release pending appeal by the defendant is governed by 18 U.S.C. § 3143(b)(1), which provides, in pertinent part:

> Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds–
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in–
>
> (i) reversal,
>
> (ii) an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c)

of this title . . . .

18 U.S.C. § 3143(b)(1).

## THIS APPEAL PRESENTS A SUBSTANTIAL QUESTION OF LAW

In *United States v. Giancola*, 754 F.2d 898, 900-01 (11th Cir. 1985), the United States Court of Appeals for the Eleventh Circuit adopted the interpretation of this portion of the statute previously made the Third Circuit in *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985). The Eleventh Circuit observed that in *Miller*, the Third Circuit had held that the proper interpretation of the "substantial question" provision was that it required "first, that the appeal raise a substantial question of law or fact, and second, that 'if that substantial question is determined favorably to the defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.'" *Giancola*, 754 F.2d at 900 (quoting *Miller*, 753 F.2d at 23-24).

The Eleventh Circuit observed that the Third Circuit had interpreted "the likely to result in reversal" language as going to the significance of the substantial issue to the ultimate disposition of the appeal. *Giancola*, 754 F.2d at 900 (citing *Miller*, 753 F.2d at 23). The Eleventh Circuit agreed with the Third Circuit that "[a] court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that

-16-

a contrary appellate holding is likely to require reversal of the conviction or a new trial." Id.; see also *United States v. Hicks*, 611 F. Supp. 497, 499 (S.D. Fla. 1985) ("Thus, in determining whether there is a substantial question, a court must keep in mind that it is not being asked to reverse its position on issues decided at trial, nor is it being asked to grant a new trial. It must decide only that a significant issue exists that merits appellate review and that the issue is critical enough to the defendant's conviction that a contrary appellate ruling would warrant a reversal." (citing *Giancola* and *Miller*)).

### SUBSTANTIAL QUESTION TO BE PRESENTED ON APPEAL

**Whether the Court Erred in Dismissing a Juror Who Agreed to Follow the Court's Instructions and in Fact Was Following the Court's Instructions, Who Was Not Interfering with or Disrupting the Deliberations of the Other Jurors, But Who on Two Occasions Over the Course of Two Days of Jury Deliberations Stated to the Other Jurors that He Felt that the Holy Spirit Had Told Him that Congresswoman Brown Was Not Guilty and Who Voted to Acquit Congresswoman Brown When the Jury First Deadlocked?**

This appeal presents a clear miscarriage of justice. Over defense objection during juror deliberations the trial judge brought in juror number 13 for individual questioning based on nothing more than the report of juror number 8 that juror number 13 had said that a higher power had told him that the defendant was not guilty. After questioning juror number 13 the trial judge found that juror number 13

-17-

was *not* wilfully refusing to follow the court's instructions on the law and in fact was properly deliberating with the other jurors and was reviewing in those deliberations the evidence presented in court at trial.   However, solely because juror number 13 honestly told the Court that he sought prayerful guidance in assessing the truthfulness of the witnesses and the verdict to be reached, and *in his mind* believed he had received such guidance from the Holy Spirit, the trial judge dismissed the juror over defense objection.

The District Court's decision was reversible error.

First, the defense was correct to object to the questioning.   Juror number 8's information that juror number 13 had stated that a higher power told him the defendant was not guilty, was supplemented by her testimony that juror number 13 was participating in the deliberations and not interfering with the deliberations of the other jurors and that he had remarked about the guidance of the higher power only two times over two full days of deliberations.   This was an insufficient basis to question juror number 13.[1]

---

[1] The Third Circuit set forth the appropriate standard for determining the propriety of juror interviews:

> We have recently had occasion to set forth the applicable legal standard governing the district courts' latitude to question jurors during deliberations about allegations of misconduct. In *Boone*, we recognized that "[i]t is beyond question that the secrecy of deliberations is critical

Second, the inquiry that the District Court then undertook clearly violated Rule 606(b) of the Federal Rules of Evidence, in that the inquiry went directly to the mental processes of juror number 13: how he was arriving at his opinion that the defendant was not guilty.

Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The District Court mistakenly viewed its inquiry as whether an "outside

---

to the success of the jury system." Id. at 329. At the same time, we emphasized that "[i]t is also manifest, however, that a juror who refuses to deliberate or who commits jury nullification violates the sworn jury oath and prevents  the jury from fulfilling its constitutional role." Id. Attempting to reconcile these disparate values, we held that "where substantial evidence of jury misconduct -- including credible allegations of jury nullification or of a refusal to deliberate -- arises during deliberations, a district court may, within its sound discretion, investigate the allegations through juror questioning or other appropriate means." Id.

*United States v. Kemp*, 500 F.3d 257, 301 (3rd Cir. 2007).

-19-

source" was affecting the deliberations of juror number 13.  The law does not use the concept "outside source," but refers to extrajudicial information or external influences. External influences, as understood in the law, are just that, *external* influences.  A bribe (*Remmer v. United States*) is an external influence, a bailiff's comment that the defendant has a bad record and should be convicted (*Parker v. Gladden*), is an external influence, deliberating jurors associating with key prosecution witnesses during sequestration of a death penalty jury (*Turner v. Louisiana*), are all examples of external influences.  But the *mental process* of juror number 13 is not an external influence, and that mental process should not have been inquired into.  However, once inquired into and determined that the higher power the juror had spoken of (only twice, over two full days of deliberations, without in any way interfering with the deliberations of the jury) was *not* an external influence as understood by the law, the inquiry should have stopped and that should have been the end of the matter.

The only case that counsel has been able to find to address the propriety of a juror being guided by a response to prayer is *State v. De Mille*, 756 P.2d 81 (Utah 1988).  In *De Mille* the court was presented with a post-verdict challenge to a conviction based on a juror's affidavit that showed that a juror relied upon prayer and the answer to the prayer to decide whether the defendant was guilty or not.  The

prayer and response at issue were summarized by the Utah Supreme Court as follows:

> DeMille's second basis for arguing that the affidavit should have been admitted is that it shows the jury considered factors other than the evidence presented at trial. Most prominent among the alleged improprieties is one juror's telling others during deliberations that she had prayed for a sign during closing argument as to DeMille's guilt. She claimed to have received a revelation that if defense counsel did not make eye contact with her when he presented his argument, DeMille was guilty -- defense counsel did not make the requisite eye contact.

*De Mille* at 83.

The Court denied the challenge reasoning that a juror's prayers and answers to prayers during jury deliberations are not outside influences subject to prohibition:

> Under rule 606(b), our inquiry is limited to determining whether the proffered juror testimony tends to show that "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Utah R. Evid. 606(b). Defendant argues that when the juror who reported to have received an answer to her prayer communicated that fact to the other jurors, an "outside influence was brought to bear on any juror," therefore making the affidavit admissible. We disagree.
>
> If we were to accept defendant's argument that supposed responses to prayer are within the meaning of the term "outside influence" in rule 606(b), we would implicitly be holding that it is improper for a juror to rely upon prayer, or supposed responses to prayer, during deliberations. Such a conclusion could well infringe upon the religious liberties of the jurors by imposing a religious test for service on a jury. See Utah Const. art. I, § 4.  A juror is fit to serve if he or she can impartially weigh the evidence and apply the law to the facts as he or she finds them. *State v. Lafferty*, 749 P.2d 1239 (Utah 1988). Prayer is almost certainly a part of the personal decision-making process of many people, a process that is employed when serving on a jury. There is no necessary inconsistency

between proper performance as a juror and reliance on prayer or supposed responses to prayer. So long as a juror is capable of fairly weighing the evidence and applying the law to the facts, one may not challenge that juror's decision on grounds that he or she may have reached it by aid of prayer or supposed responses to prayer. Therefore, we hold that under rule 606(b), prayer and supposed responses to prayer are not included within the meaning of the words "outside influence." Testimony that a juror has so acted is not admissible to challenge a verdict; the trial judge properly refused to consider the proffered affidavit.

*De Mille* at 84 (footnote omitted).[2]

Neither the Government nor the District Court cited a single case which has found that a juror's personal prayer life before or during deliberations could be the basis of a finding of good cause to dismiss a juror. The District Court itself acknowledged that it was certainly permissible for the juror to pray to seek guidance or inspiration to try to come to a proper decision - - and that is exactly what this juror had done. The juror did nothing improper and the juror's internal mental belief that the Holy Spirit had offered him guidance in understanding the evidence and truthfulness of the witnesses - witnesses, all of whom, by the way, had taken an oath "so help me God" to tell the truth - was not in any way a disqualifying mental process

---

[2] A juror may seek divine guidance through prayer in reaching a decision, and courts have so recognized. See *State v. Rocco*, 119 Ariz. 27, 579 P.2d 65 (Ariz. Ct. App. 1978); *State v. Graham*, 422 So. 2d 123 (La. 1982), appeal dismissed, 461 U.S. 950, 77 L. Ed. 2d 1309, 103 S. Ct. 2419 (1983) (cited in *De Mille*, Stewart, J., *dissenting*, at p. 85.

much less a disqualifying external influence.[3]

Indeed, before being permitted to serve as a juror in this case, juror number 13

and all other jurors had to swear to seek God's help to perform their duty properly:

> COURTROOM DEPUTY: Do each of you solemnly swear that you will well and truly try the case now before this court and render a true verdict, according to the law, evidence, and instructions of this court, so help you God?

[Doc. 171, pp. 44-45]

To make a finding - which the District Court dressed up as a fact finding - that

the Holy Spirt was an "outside source" was wrong in both law and theology.  Wrong

in law because as noted above, the external influences that the Supreme Court has

barred from jury deliberations, finding them presumptively prejudicial to the

defendant, are actual, real, physical phenomena of this material world - bribery or

similar obstructive  conduct or contact - and wrong as a matter of theology as well.

Anyone familiar with the Bible would know that the Holy Spirit is an *indwelling*

spirit, not an external force.[4]

---

[3] The oath administered to all witnesses in this case went as follows: "Do you solemnly swear that the testimony you are about to give before this court will be the truth, the whole truth, and nothing but the truth, so help you God?"

[4] 1 Corinthians 3:16, "Do you not know that you are a temple of God and that the Spirit of God dwells in you?" 1 Corinthians 6:19, "Or do you not know that your body is a temple of the Holy Spirit who is in you, whom you have from God, and that

But this appeal will not and should not be decided on theological grounds - to do so would be forbidden by the First Amendment - and that is why it was improper for the District Court to dismiss juror number 13 on the basis of a "fact finding" that is theological in nature, that when juror number 13 sought the very guidance and assistance that the Court rightly requires all witnesses and jurors to assent to, that the witness testify truthfully *with the help of God* and that the juror do his duty as a juror *with the help of God*, that such juror's personal belief that God or the Holy Spirit has indeed helped him reach a conclusion simply is not the sort of improper external influence that taints a jury, is not the sort of external influence that results in any presumption of prejudice, and is not the sort of external influence that constitutes just

---

you are not your own?" 2 Corinthians 6:16, "Or what agreement has the temple of God with idols? For we are the temple of the living God; just as God said, "I will dwell in them and walk among them; and I will be their God, and they shall be my people." Ezekiel 36:27, "I will put My Spirit within you and cause you to walk in My statutes, and you will be careful to observe My ordinances." Isaiah 63:11 "Then His people remembered the days of old, of Moses Where is He who brought them up out of the sea with the shepherds of His flock? Where is He who put His Holy Spirit in the midst of them," 2 Timothy 1:14, "Guard, through the Holy Spirit who dwells in us, the treasure which has been entrusted to you." Acts 6:5, "The statement found approval with the whole congregation; and they chose Stephen, a man full of faith and of the Holy Spirit." Ephesians 5:18, "And do not get drunk with wine, for that is dissipation, but be filled with the Spirit," Romans 8:11, "But if the Spirit of Him who raised Jesus from the dead dwells in you, He who raised Christ Jesus from the dead will also give life to your mortal bodies through His Spirit who dwells in you." Galatians 4:6, "Because you are sons, God has sent forth the Spirit of His Son into our hearts, crying, "Abba! Father!"

or good cause under Rule 23, Fed. R. Crim. P.,  to dismiss the juror.  Rather the

contrary.  Such jurors should be commended for doing their duty as they have sworn

to so do.[5]

    This case and its facts are far from any decisional authority cited by the District

Court or Government in support of the dismissal of the juror.[6]  Instead, the authority

---

[5] Indeed, dismissing the juror based on his sincere religious belief in asking God for guidance in this most important decision infringed on the juror's First Amendment freedom of religion, a Constitutional right which in no way was in tension with the defendant's right to a fair trial under the Sixth Amendment.

[6] *United States v. Abbell*, 271 F.3d 1286 (11th Cir. 2001) (juror said she did not have to follow the law, the law was only advisory, not binding on the jury), *United States v. Geffrard*, 87 F.3d 448 (11th Cir. 1996) (juror's religious belief prohibited her from judging others; juror insisted that defendant would not be guilty because entrapped, but court had instructed the jury that entrapment was not a defense in this case), *United States v. Godwin*, 765 F.3d 1306 (11th Cir. 2014) (juror did not agree with the law and did not care what the law said), *United States v. Martinez*, 481 Fed. Appx. 604 (11th Cir. 2012) (juror refused to reach verdict because he had not personally witnessed the events and would not follow court's instruction to reach verdict based on evidence presented in court and not just on what juror had personally seen), *United States v. Augustin*, 661 F.3d 1105 (11th Cir. 2011) (all eleven jurors unanimous that dismissed juror refused to deliberate, refused to follow the court's instructions and dismissed juror was evasive when questioned), *United States v. Decoud*, 456 F.3d 996 (9th Cir. 2006) (juror herself sent court note asking to be taken off jury because her religious beliefs prohibited her from judging others), *United States v. Burrous*, 147 F.3d 111 (2nd Cir. 1998) (dismissed juror stated she could not follow the oath because she had to follow the Bible which she understood to prohibit her from judging others), *United States v. Kemp*, 2005 U.S. Dist. LEXIS 7560 (E.D.Pa. 2005), and on appeal *United States v. Kemp*, 500 F.3d 257 (3rd Cir. 2007) (juror had made statements that she was unlikely to believe FBI agent witnesses because of their occupation and expressed bias against Government and FBI). An example of a true external influence or outside source as the district court referred to

relied upon mandates the exact opposite conclusion from that reached by the District

Court.  The District Court found that the juror was *not wilfully disobeying the Court's*

*instructions*, and was being sincere in his answers to the Court's questions.  The juror

assured the Court that he was following the Court's instructions, was considering the

---

the issue, would have been the introduction of a Bible into the jury room and the juror or jurors taking instruction from Bible texts contrary to the law as instructed by the court.  This problem comes up from time to time in death penalty habeas cases, where one or more jurors may refer to the Biblical injunction of an eye for an eye or in support of the death penalty for murder.  Such cases present a prohibited external influence but even there, courts typically find the error harmless.  *See e.g., McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005), *Oliver v. Quarterman*, 541 F.3d 329 (5th Cir. 2008) and *Robinson v. Polk*, 444 F.3d 225 (4th Cir. 2006).

> McNair's next claimed basis for habeas relief is that jurors improperly considered extraneous evidence during their deliberations in the guilt phase of his trial. Evidence shows that Les Davis, a Christian minister who served as the foreman of McNair's jury, brought a Bible into the jury room during deliberations, read aloud from it, and led the other jurors in prayer. McNair now claims that the Bible, which had not been admitted into the record, constituted extraneous evidence and that the jurors' consideration of it violated his Sixth Amendment right to a fair trial. The Alabama Court of Criminal Appeals, applying state law, held that McNair was not entitled to relief. *McNair*, 706 So. 2d at 835-38. The district court also denied relief on this claim.

Judge Anderson, writing for this Court, found no reversible error.  *McNair*, 416 F.3d at 1301.

In the instant case, juror number 13 did not bring a Bible into the jury room, did not quote from the Bible or in any way purport to reach a verdict based on any Biblical injunction or law.

evidence and going through the charges. Given this record, the District Court's conclusion that the juror's belief that the Holy Spirit was offering him guidance in no way was in conflict with the juror's duty to base his verdict on the evidence and law as instructed by the Court.

The District Court itself cited *United States v. Thomas*, 116 F.3d 606 (2nd Cir. 1997) (albeit for a different proposition), which held that before a juror may be dismissed, there must be no doubt that the juror is engaging in *deliberate misconduct*. The District Court itself found that the juror sincerely believed he was following the Court's instructions. Given that, it was error even if the District Court's view of the legal effect of the juror's belief in the Holy Spirit was correct (which we do not concede) to dismiss the juror without first putting the juror on notice that he must not rely upon the guidance of the Holy Spirit and if he thereafter, having been instructed to not do so, persisted, he would then be dismissed for his wilful misconduct.

This case is completely unlike the cases relied upon by the District Court. For example, in *United States v. Geffrard*, the juror was not seeking divine guidance and relying upon it, instead the juror had *a fixed religious belief that she was not permitted to sit in judgment of others* and because of this religious belief, independent of any evidence and contrary to the court's instruction on the law, was unable to serve as a juror. Independent of her Swedenbourgean religious views, the juror in *Geffrard*

-27-

insisted on finding the defendant had been entrapped despite the district court instructing the jurors that entrapment was not an issue in the case.  The juror was expressly and unambiguously refusing to follow the law as instructed by the court.

Similarly in *United States v. Abbell* and *United States v. Godwin*, the jurors at issue each expressly refused to follow the law as instructed by the court. In *Abbell* the juror stated that she did not have to follow the law, that the law was only advisory and not binding on the jury.  In *Godwin* the juror had repeatedly said that he did not agree with the law (as instructed by the court) and didn't care what the law said.  In *Godwin* all eleven jurors under oath unanimously testified to the statements of the dismissed juror.  Cases of wilful refusal to follow the court's instructions on the law - jury nullification cases - are common, but are not what we have in the instant appeal.

Indeed all of the evidence in the instant appeal supports the conclusion that this juror accepted the law as given by the Court and followed the Court's instructions. The District Court's "fact finding" that the juror was not doing so despite his uncontradicted assurances (assurances supported, not contradicted by the only evidence taken from another juror, juror number 8), was based on nothing more in fact than an unsupported *legal* conclusion that the District Court inferred from the juror's candid disclosure that he believed he had received guidance from the Holy Spirit.  The District Court found the two statements - (1) that the juror was abiding

-28-

by the Court's instructions and deciding the case solely on the evidence presented in court, and (2) the statement that the juror had received guidance from the Holy Spirit, to be in "tension" and to necessarily imply a contradiction. There is no necessary contradiction between the two statements, but if there were, it would be a legal, not a factual conclusion. This is not the sort of "fact finding" that comes clothed with any deference of correctness, nor is this Court bound to accept it, nor is it subject to clear error review, because this is simply an inference based on circular reasoning. The circular reasoning is that the conclusion only follows if one assumes the answer.

The evidence in this case was uncontradicted that juror number 13 was in fact following his oath as a juror, deliberating with the other jurors, reviewing the charges, considering the evidence presented in the courtroom at trial and nothing else. As his oath adjured him to do, he sought the help of God and felt that he received such help in understanding the truth of the witness testimony and the truth of the charges against the defendant. His conclusion, reached with the help of prayer and in his mind, the help of the Holy Spirit, was that the defendant was not guilty. On this record one must conclude that there is a more than reasonable possibility that his verdict was based on his view of the sufficiency of the evidence, any contrary

conclusion could only come in a topsy turvy world.[7]

Instead, the record in this case supports only one conclusion: that this juror was basing his verdict on his view of the sufficiency of the evidence, after prayerful consideration and as he saw it, in his mind, guidance from the Holy Spirit. Whether he should or should not have depended on any guidance from the Holy Spirit does not resolve the matter in favor of his dismissal, because the well established law in this and other circuits is that so long as there is any reasonable possibility that the juror is basing his view on the sufficiency of the evidence, he may not be dismissed.

---

[7]        *Topsy Turvy World*

If the butterfly courted the bee,
  And the owl the porcupine;
If churches were built in the sea,
  And three times one was nine;
If the pony rode his master,
  If the buttercups ate the cows,
If the cats had the dire disaster
  To be worried, sir, by the mouse;
If mamma, sir, sold the baby
  To a gypsy for half a crown;
If a gentleman, sir, was a lady,—
  The world would be Upside-down!
If any or all of these wonders
  Should ever come about,
I should not consider them blunders,
  For I should be Inside-out!

William Brighty Rands

Dismissal requires substantial evidence that the juror is engaged in wilful misconduct. Absent such evidence and only when there is no substantial possibility that the juror is basing his verdict on the evidence may the juror be dismissed. *Abbell*; *United States v. Kemp*, 500 F3d 257, 301-306 (3rd Cir. 2007). The record in this case did not permit the District Court to dismiss juror number 13 and it was reversible error to do so, depriving the defendant of her Sixth Amendment right to a unanimous verdict.

## CONCLUSION

Congresswoman Brown submits that her appeal raises a substantial legal question. Congresswoman Brown is not required to establish that the ultimate result on appeal will be reversal on this issue. Instead, this Court need do no more than decide that within the meaning of 18 U.S.C. § 3143(b), the issue which Congresswoman Brown will raise on appeal is sufficiently substantial to satisfy the requirements of the statute, i.e., that is "one of more substance than would be necessary to a finding that it was not frivolous. It is a "close" question or one that very well could be decided the other way." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985). Such is the juror dismissal question in this case.

Additionally, this issue would, if successful, result in a reversal of all counts of conviction. See *United States v. Randell*, 761 F.2d 122, (2d Cir. 1985) (for bail pending appeal defendant must show all counts of conviction would be reversed).

-31-

Accordingly, Congresswoman Brown respectfully requests this Honorable

Court order Congresswoman Brown be released on conditions pending the resolution

of her appeal.

Respectfully submitted,

KENT & McFARLAND
ATTORNEYS AT LAW

  s/ William Mallory Kent
WILLIAM MALLORY KENT
Florida Bar Number 260738
24 North Market Street, Suite 300
Jacksonville, Florida 32202
904-398-8000 Telephone
904-348-3124 Fax
kent@williamkent.com

-32-

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this motion does not comply with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A).  This motion contains ca. 8,885  words. A separate *unopposed* motion seeking permission to file this motion in excess of the type-volume limitation is being filed concurrently herewith.

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Appellant certifies that the size and style of type used in this brief is 14 point Times New Roman.

## CERTIFICATE OF SERVICE AND FILING

I certify that on December 29, 2017, I caused a true and correct copy of Brown's Motion for Release Pending Appeal to be served via CM/ECF upon all counsel of record and a duplicate of this motion has been filed with the District Court as required by District Judge Timothy Corrigan.

s/ William Mallory Kent
William Mallory Kent

-33-

**EXHIBIT A**

**COPY OF JUDGMENT**