## No. 17-15470-E

---

### In the
### United States Court of Appeals
### for the Eleventh Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CORRINE BROWN,

*Defendant-Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 3:16-CR-93-J-32JRK

---

## UNITED STATES' OPPOSITION TO APPELLANT'S MOTION FOR RELEASE PENDING APPEAL

---

MARIA CHAPA LOPEZ
United States Attorney

COLIN P. MCDONELL
Assistant United States Attorney
Appellate Division

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division
Florida Bar No. 438741
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

January 8, 2018

*United States v. Corrine Brown*
No. 17-15470-E

## Certificate of Interested Persons
## and Corporate Disclosure Statement

In addition to the persons and entities identified in the certificate of

interested persons and corporate disclosure statement in Corrine Brown's

Motion for Release Pending Appeal, the following persons and entities have an

interest in the outcome of this case:

1.    Andrews, Barbara, victim;

2.    Andrews, John, victim;

3.    Baker, John D., II, victim;

4.    Bentley, A. Lee, III, former United States Attorney;

5.    Bittel, Stephen, victim;

6.    Caldwell, Leslie, former Assistant Attorney General, United States
      Department of Justice;

7.    C.A.P. Contracting Inc., victim;

8.    Charter Communications (ticker symbol: CHTR), victim;

9.    Chartrand, Gary, victim;

10.   Community Leadership PAC, Inc., victim;

C-1 of 4

*United States v. Corrine Brown*
No. 17-15470-E

11.   Cronon, John P., Acting Assistant Attorney General,
      United States Department of Justice;

12.   CSX Corporate Citizenship (ticker symbol: CSX), victim;

13.   Davis, Hon. Brian J., United States District Judge;

14.   Delaware North Companies, Inc. Buffalo, NY, victim;

15.   Finker, Lonya, victim;

16.   Flooring with Dimensions, dba S.L. Gresham Co., victim;

17.   Florida East Coast Industries Company, LLC, victim;

18.   Geraghty, Pat, victim;

19.   Greenpointe Holdings, LLC, victim;

20.   Greenspoon Marder, victim;

21.   Hall, Loretta, victim;

22.   Halverson, Steven T., victim;

23.   Hulser, Raymond N., former Chief, Public Integrity Section,
      United States Department of Justice;

24.   Lazzara, Gaspar, victim;

25.   Lipsky, Richard, victim;

26.   Ludwig Family Foundation, victim;

*United States v. Corrine Brown*
No. 17-15470-E

27.    Marta Employees Charity Club, victim;

28.    McDonell, Colin P., Assistant United States Attorney;

29.    McFarland, Ryan E., Esq.;

30.    Mills, Harry, victim;

31.    Mills, Rosa, victim;

32.    Muldrow, W. Stephen, Acting United States Attorney;

33.    Orange Park Mitsubishi, victim;

34.    Pajcic & Pajcic, victim;

35.    Picerne Developmental Corporation, victim;

36.    Picerne, John, victim;

37.    Rhodes, David P., Assistant United States Attorney,
       Chief, Appellate Division;

38.    Richardson, Hon. Monte C., United States Magistrate Judge;

39.    Simply Heathcare Plans, Inc., victim;

40.    Stafftime, LLC, victim;

41.    Stermon, Kent, victim;

42.    Tirol, AnnLou, Chief, Public Integrity Section, United States
       Department of Justice;

C-3 of 4

*United States v. Corrine Brown*
No. 17-15470-E

43.    Toomey, Hon. Joel B., United States Magistrate Judge;

44.    USSC, LLC, victim;

45.    Ward, Michael, victim;

46.    Wiggins, Janet, victim; and

47.    Wiggins, Sidney, victim.

C-4 of 4

In the United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.                                          No. 17-15470-E

CORRINE BROWN,
  *Defendant-Appellant*

## United States' Opposition to Appellant Corrine Brown's Motion for Release Pending Appeal

The United States opposes Corrine Brown's motion for release pending appeal. (She is not now detained; she is scheduled to report to prison on January 29, 2018.) This Court should deny the motion because the one issue that she has raised is not a substantial one likely to result in reversal on appeal.

## Course of Proceedings

Corrine Brown was found guilty at trial of 18 offenses: 14 fraud crimes and 4 tax crimes. Most (though not all) related to Brown's supposed charity—One Door for Education—whose name proved prophetic: although the charity raised hundreds of thousands of dollars purportedly to help underprivileged students further their education, that one door barely opened, providing a total

of $1200 to two students. Brown and her codefendants, meanwhile, pocketed hundreds of thousands. *See generally* Doc. 235.

The district court sentenced Brown to a total of 60 months' imprisonment. Brown moved to remain on release pending appeal, but the district court denied that motion, concluding that she had "not presented a 'substantial question of law or fact' that would warrant permitting her to remain on release pending appeal." Doc. 258 at 3 (quoting 18 U.S.C. § 3143(b)(1)(B) and *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).[1] Doc. 258. Brown now asks this Court to allow her to avoid serving her sentence during the appeal, relying on the same appellate issue that the district court rejected.

## Argument

The Bail Reform Act of 1984 imposes stringent restrictions on the availability of bail pending appeal. *See* 18 U.S.C. §§ 3143 and 3145. The Act requires a defendant who has been convicted and sentenced to imprisonment to be detained during her appeal, unless she establishes:

> (A)   by clear and convincing evidence that [she] is not likely to flee or pose a danger to the safety of any other person or the community if released[;] and

---

[1] The district court's order denying release (Doc. 258) is Attachment A. Its order denying Brown a new trial (Doc. 200), which addresses in detail the same juror issue, is Attachment B.

(B)    that the appeal is not for the purpose of delay and
raises a substantial question of law or fact likely to
result in [reversal].

18 U.S.C. § 3143(b); *see United States v. Giancola*, 754 F.2d 898, 900–01 (11th

Cir. 1985). "[A] 'substantial question' is one of more substance than would be

necessary to a finding that it was not frivolous. It is a 'close' question or one

that very well could be decided the other way." *Giancola*, 754 F.2d at 901. (The

United States does not dispute the other criteria for release.)

Congress placed the burden on the appellant to establish entitlement to

release, reversing the presumption in favor of bail that had existed under the

previous statute. *Id.* at 900; *see also* S. Rep. No. 98–147 at 53 (1983) ("Once

guilt of a crime has been established in a court of law, there is no reason to

favor release pending imposition of sentence or appeal"; indeed, "release of a

criminal appellant into the community after conviction may undermine the

deterrent effect of the criminal law."). Brown has not satisfied her burden.

In seeking release, Brown relies solely on her challenge to the district

court's removal of Juror No. 13. That juror had told the others, at the outset of

deliberations (and again later that day), that he had received information from

the Holy Spirit that Brown was not guilty of any of the charged counts. *See*

Doc. 182 at 50–51. The court's removal of that juror does not entitle Brown to

3

release pending her appeal, because—as the district court concluded, Doc.

258—her challenge does not present a substantial question of law or fact. *See*

18 U.S.C. § 3145(b)(1)(B). She should begin serving her sentence.

On May 8, 2017, the jury began its deliberations. The following evening,

Juror No. 8 informed the courtroom deputy that Juror No. 13 had mentioned

"higher beings" with respect to Brown since the beginning of deliberations.

Doc. 139 at 5. The district court notified the parties about Juror No. 8's

concern and conducted a hearing the following morning. Juror No. 8

confirmed what she had told the courtroom deputy and shared a note she had

written:

> With all due respect, I'm a little concerned about a statement
> made by Juror #13 when we began deliberation. He said "A
> Higher Being told me Corrine Brown was Not Guilty on all
> charges." He later went on to say he "trusted the Holy Ghost." We
> all asked that he base his verdict on the evidence provided, the
> testimony of the witnesses and the laws of the United States court.
> Other members of the Jury share my concern.

Doc. 139 (Court Ex. 1). Juror No. 8 stated that Juror No. 13 had made those

comments on the first day of deliberations—the first comment "basically right

when deliberations began" and the second "maybe a couple of hours later."

Doc. 139 at 23. Juror No. 8 was "concerned that it was going to interfere in

[Juror No. 13's] ability to" deliberate. *Id.* at 22.

4

After discussing the issue with the parties, the district court elected to question Juror No. 13. Doc. 139 at 25–33. The court asked the parties how it should inquire of the juror, and both parties agreed that the court should first ask generally whether he had expressed a religious viewpoint that is guiding his ability to deliberate, and then more specifically whether he had said that a higher power had told him that Brown was not guilty on all counts. *Id.* at 34–35.

Juror No. 13 initially denied that he was having difficulties with any religious or moral belief that would interfere with "his ability to decide the case on the facts presented and on the law." *Id.* at 37. But when the court asked him whether he had expressed any religious sentiment to other jurors, he admitted that he had told the other jurors, "I prayed about this, I have looked at the information, and ... I have received information as to what I was told to do in relation to what I heard here ... this past two weeks." *Id.* at 39. When asked for the source of the information, Juror No. 13 stated that he had received the information "[s]ince we've been here" from "My Father in Heaven." *Id.*

The district court excused Juror No. 13 from the courtroom and asked counsel for their views on its asking "the direct question: Did you ever make the statement that a higher being told me that Corinne Brown was not guilty on all charges?" *Id.* at 44. The court also proposed asking the juror whether he

5

had been following the court's instructions about fully considering the evidence
with the other jurors. *Id.* at 45. Brown's lawyer "d[id]n't have any objection to
those questions." *Id.* at 46.

The district court brought the juror back and asked him whether he had
said something like, "A higher being told me that Corrine Brown was not
guilty on all charges?" *Id.* at 48. He responded, "When we were giving why we
were—insight, as far as not guilty or whatever for the first charge, yes." *Id.* at
49. The court then asked, "Did you say the words, A higher being told me that
Corrine Brown was not guilty on all charges?" *Id.* Juror No. 13 responded,
"No. I said the Holy Spirit told me that," and he confirmed that he had
"mentioned it in the very beginning when we were on the first charge." *Id.*

After hearing argument from the parties (the United States for removal,
Brown against), *id.* at 50–54, the district court found that Juror No. 13 believed
he had received information from a higher source that Brown was innocent of
all counts, which was "essentially a violation … of the court's instructions to
base the decision only on the law and the facts that were adduced at trial, and
in accordance with the court's instructions." *Id.* at 57–59. (The court had
instructed the jurors, both preliminarily and at the close of the evidence, that
they must base their verdict solely on the evidence at trial and the court's
instructions. *See, e.g.*, Doc. 171 at 50 ("Because your job is to decide this case

6

based solely on the evidence you hear in this courtroom. If you didn't get it in this courtroom, you shouldn't have it."); Doc. 131 at 2 ("Your decision must be based only on the evidence presented during the trial. … You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole.").)

The district court further found "beyond a reasonable doubt" that there was "no substantial possibility" that Juror No. 13 was capable of basing his decision only on the evidence and the court's instructions. Doc. 139 at 59. As a result, the court excused Juror No. 13, over Brown's objection, and replaced him with an alternate juror. *Id.* at 60, 64–65, 72. The reconstituted jury deliberated for an additional day and a half before finding Brown guilty of 18 of the 22 counts against her. Doc. 133.

Brown moved for a new trial, arguing that the district court had erred by excusing Juror No. 13. Doc. 187. The court denied the motion, setting out in detail the factual findings supporting its ruling. Doc. 200. The court acknowledged that Juror No. 13 was "very earnest and sincere, and ... likely believed that he was trying to follow the Court's instructions." *Id.* at 13. But "by making statements to his fellow jurors at the beginning of deliberations that he was receiving information from a higher authority who was directing him as to what verdict he should reach, he was acting inconsistently with the

7

court's instruction that the case be decided solely on the law and the evidence in the case." *Id*. Furthermore, Juror No. 13 had admitted to the court that he "had expressed a conclusion from the beginning of the deliberations and without discussion with his fellow jurors, in violation of the Court's instructions." *Id*. at 22. The court explained its assessment of Juror No. 13's credibility, noting that the juror had been "initially 'hesitant' to explain how his religious views came to the fore during deliberations, but as questioning continued, he eventually confirmed the actual statement brought to the Court's attention by Juror No. 8—that being that the Holy Spirit 'told him' that the defendant was not guilty on all charges." *Id*. at 13–14. Moreover, the court found, Juror No. 13 "appeared to continue to believe that a higher power was telling him how he ought to proceed in the deliberations" and "his religious beliefs compelled him to disregard [the court's] instructions and instead follow direction from the 'Holy Spirit' to find the defendant 'not guilty on all charges.'" *Id*. at 14, 20. The court found that Juror No. 13 "seemed unaware of the inconsistency" between his beliefs and the court's instructions, rendering him "unable to follow the Court's instructions," *id.* at 20–21, and leaving him positioned to "continue in the same vein if permitted to remain" on the jury, *id.* at 22–23. Ultimately, the court found Juror No. 13's "expressed views to be inconsistent with the duties of a sworn juror because he was not able to

8

deliberate in a way that reaches decision based only on the evidence adduced at trial and the law and instructions given by the Court." *Id.* at 14.

The district court "carefully drew a distinction between a juror who is praying for guidance or seeking inspiration, from this situation where the juror actually stated that an outside source 'told him' that the defendant was not guilty of all charges." *Id*. And, finally, the court reiterated its finding "beyond a reasonable doubt," "based on the evidence before it," that there was "no substantial possibility that Juror No. 13 was able to base his decision only on the evidence and the law as the court gave it to him in the instructions and that he was using external forces to bring to bear on his decision-making in a way that's inconsistent with his jury service and his oath." *Id*.

Brown then sought release pending appeal, Doc. 250, which the United States opposed, Doc. 254. The district court denied her motion, concluding that her challenge to the removal of Juror No. 13 does not present a "substantial question of law or fact" entitling her to remain free during the appeal. Doc. 258. Her motion in this Court, based on the same juror-removal issue, likewise should be denied.

For starters, this Court reviews only for abuse of discretion the district court's decision to remove a juror. *United States v. Register*, 182 F.3d 820, 839 (11th Cir. 1999). And, as is the case here, the "district court's discretion … is at

its zenith when the alleged [juror] misconduct relates to statements made by the jurors themselves." *United States v. Bradley*, 644 F.3d 1213, 1277 (11th Cir. 2011) (internal quotation marks omitted). Thus, this Court "will reverse the district court only if … it discharged the juror 'without factual support, or for a legally irrelevant reason.'" *Register*, 182 F.3d at 839 (quoting *United States v. Smith*, 918 F.2d 1501, 1512 (11th Cir. 1990)). This deferential standard of review (and the limited scope of review) weigh against this being a substantial question that "very well could be decided the other way," *Giancola*, 754 F.2d at 901.

On top of that, this Court reviews for clear error the district court's fact findings concerning a juror's ability to serve. *United States v. Godwin*, 765 F.3d 1306, 1316 (11th Cir. 2014). Once a jury has begun its deliberations, the court may excuse a juror "for good cause," *id.*, which exists if, for example, a juror "refuses to apply the law or to follow the court's instructions," *United States v. Abbell*, 271 F.3d 1286, 1302 (11th Cir. 2001); *see also Godwin*, 765 F.3d at 1316. But the court may not dismiss the juror unless "no 'substantial possibility' exists that [he] is basing [his] decision on the sufficiency of the evidence." *Abbell*, 271 F.3d at 1303. In making this assessment, the district court "is uniquely situated to make the credibility determinations that must be made in

10

cases like this one[,] where a juror's motivations and intentions are at issue."
*Id.*

Here, the district court set out the correct legal standard and carefully
made a fact finding that comported with that standard. It found "beyond a
reasonable doubt," "based on the evidence before [it]," "no substantial
possibility that [Juror No. 13 was] able to base his decision only on the
evidence and the law as the court gave it to him in the instructions and that he
[was] using external forces to bring to bear on his decision-making in a way
that's inconsistent with his jury service and his oath." *See* Doc. 200 at 14. So
"the only question" for this Court on appeal is whether the district court
"clearly erred in finding that the juror was refusing to follow [its] instructions."
*Godwin*, 765 F.3d at 1318.

Brown's challenge on appeal does not present a substantial question.
Clear error, in this context especially, "is seldom easy to establish." *Id.* As this
Court likewise recognized in *Godwin*, "The district court was on the scene,
viewed the jurors as they described the problem, and therefore was 'uniquely
situated to make the credibility determinations that must be made' whenever 'a
juror's motivations and intentions are at issue.'" *Id.*; *see also United States v.
Fajardo*, 787 F.2d 1523, 1525–26 (11th Cir. 1986) (declining to second-guess
district court's finding that juror's removal was warranted, despite

11

underwhelming evidence, because this Court's "review is limited to an

antiseptic record and is ordinarily an inferior substitute for the first-hand

observations of the trial court").

Therefore, the governing standard and scope of review—whether the

district court clearly erred in finding that Juror No. 13 was refusing to follow

its instructions—like the overall, abuse-of-discretion standard, weighs against

this issue's presenting a substantial question that "very well could be decided

the other way," *Giancola*, 754 F.2d at 901; *see Univ. of Ga. Athletic Ass'n v. Laite,*

756 F.2d 1535, 1543 (11th Cir. 1985) ("While the 'clearly erroneous' standard

of review is less stringent than the well-known sports rule, 'The referee is

always right,' it nevertheless presents a formidable challenge to appellants who

... seek to overturn the factual findings of a district court."). Yet, despite that

formidable challenge, Brown does not even attempt to satisfy the clear-error

standard in her 30-page motion, asserting only that the standard shouldn't

apply. *See* Brown's motion at 27. And she does not even mention the abuse-of-

discretion standard, let alone explain why she thinks she can satisfy it here.

She cannot. The record amply supports the district court's findings that

Juror No. 13 was not following the court's instructions, did not understand

that he was not following those instructions, and would likely continue not to

follow those instructions if left on the jury. Juror No. 8 was concerned enough

about Juror No. 13 that she brought to the court's attention his repeated comments that a "Higher Being" had told him that "Corrine Brown was Not Guilty on all charges" and that he "trusted the Holy Ghost." Doc. 139 (Court Ex. 1); Doc. 139 at 23. The court personally observed Juror No. 13's responses to questions and also his demeanor. When the court asked direct questions regarding this issue, he was initially hesitant to provide direct answers. *Id.* at 37–39. He eventually admitted that he had told the other jurors that he had "prayed about this, [that he had] looked at the information, and that [he had] received information as to what [he] was told to do" from his "Father in Heaven." *Id.* at 39. Notwithstanding his acknowledgment that he had received information telling him what to do, he persisted that he was following the court's instructions to decide the case solely on the evidence. *Id.* at 40. During the second questioning, though, he confirmed that he had told his fellow jurors at the beginning of deliberations that the "Holy Spirit" had told him that Brown was not guilty of all charges. *Id.* at 49.

Given this evidence, and the district court's findings of fact, Brown has not raised a substantial question, that is, a "close" question that very well could be decided the other way on appeal. *See Giancola*, 754 F.2d at 901. Juror No. 13's announcement at the beginning of deliberations that the Holy Spirit told him that Brown was not guilty of every single count plainly violated the

13

court's instructions that the jury was to decide the case based solely on the law and evidence in the case and "only after fully considering the evidence with the other jurors." Doc. 131 at 2, 29. So too, of course, would a juror's statement at the outset of deliberations that he had received word from the Holy Spirit that Brown was *guilty* of all counts.[2]

The issue is not a substantial one, and that is so even though this Court has not previously addressed the precise scenario presented by the juror's actions here; this Court's treatment of the issue in other juror-removal cases answers the version now before it. Indeed, in the several opinions in which this Court has addressed the issue, in every case save one it has upheld the district court's exercise of its discretion to remove a juror during deliberations. *See United States v. Oscar*, No. 14-14584, 2017 WL 6513995 (11th Cir. Dec. 20, 2017) (juror who said she was biased, was too emotional to follow the law, and felt the need to "defend [her] people") (published); *United States v. Godwin*, 765

---

[2]Brown argues that the directive from the Holy Spirit was just Juror No. 13's "mental process" and "that should have been the end of the matter." Brown's motion at 20. But the juror did not say that it was just his mental process—he said that he had "received information from … my Father in Heaven" that Brown was not guilty of each and every count. The district court correctly decided that that should not have been the end of the matter. Otherwise, a juror could announce at the outset of deliberations that he's done deliberating—because the Holy Spirit has told him that the defendant is guilty—and neither the defendant nor the district court could do anything about it.

14

F.3d 1306, 1316 (11th Cir. 2014) (juror who refused to follow court's

instructions or to apply instructions to evidence presented at trial); *United States*

*v. Martinez*, 481 F. App'x 604, 608 (11th Cir. 2012) (juror who said she was

unable to reach verdict because she had not personally observed defendant

commit offenses); *United States v. Vega*, 450 F. App'x 844 (11th Cir. 2012)

(juror who repeatedly told court that, because of past experience, he could not

be unbiased); *United States v. Augustin*, 661 F.3d 1105 (11th Cir. 2011) (juror

who "evasively" responded to court's questions on whether she would follow

the law and apply it to evidence); *United States v. Abbell*, 271 F.3d 1286, 1302

(11th Cir. 2001) (juror who thought she did not have to follow the law and

considered court's instructions merely advisory); *United States v. Geffrard*, 87

F.3d 448 (11th Cir. 1996) (juror whose religious beliefs rendered her unable to

"live with a verdict of guilty for any of the accused on any of the charges");

*United States v. Register*, 182 F.3d 820, 840 (11th Cir. 1999) (juror who had

indirectly received extrinsic information from defendants); *United States v.*

*Smith*, 918 F.2d 1501, 1512 (11th Cir. 1990) (juror who was upset that jury

deliberations would interfere with family's holiday plans); *United States v.*

*Wilson,* 894 F.2d 1245 (11th Cir. 1990) (pregnant juror who had repeatedly

gotten ill during trial); *United States v. Barker*, 735 F.2d 1280, 1283 (11th Cir.

1984) (juror who had been seen putting her hand on defendant's shoulder and

smiling).[3] The sole exception is *United States v. Spence*, 163 F.3d 1280, 1283–84 (11th Cir. 1998), which is nothing like this case (or any of the other ones, for that matter). There, this Court held that the district court had abused its discretion by dismissing a juror at 3:00 p.m. due to her reaction to some medication, even though nothing even suggested that she could not have returned the following morning to continue deliberating. *Id.*

Although Brown attempts to recast the issue—the facts, really—by asking whether the district court may remove a juror for "asking God for guidance," Brown's motion at 28, that's not what the district court did (nor is it what Juror No. 13 did). The district court made that vividly clear:

> Had Juror No. 13 simply stated to his fellow jurors that he was praying for guidance during the deliberations, that would not have been problematic (and I doubt Juror No. 8 would have brought it to the Court's attention). But that is not what happened here. Juror No. 13 announced at the beginning of deliberations that he was following instructions from an outside source, which is not permitted, even when that source derives from one's own religious beliefs.

---

[3]We are not suggesting, of course, that the district court's decision to replace a juror is unassailable. To the contrary, it is a very significant decision that warrants careful review by this Court. But the history of these juror-removal claims in this Court illustrates both that district courts exercise their discretion carefully before taking the significant step of excusing a deliberating juror and that this Court conscientiously applies the abuse-of-discretion standard of review. In any event, the circumstances of this case—including Juror No. 13's admissions and the district court's careful evaluation of those circumstances—render Brown's claim here especially insubstantial, independent of this Court's resolution of the issue previously.

16

Doc. 200 at 23–24.

Nor did the district court remove Juror No. 13 "based on his sincere religious belief," as Brown also suggests. *See* Brown's motion at 25. The court made this clear as well: "I am not at all suggesting that persons of religious faith are unsuitable to serve as jurors." Doc. 200 at 23. Contrary to Brown's assertion, the district court findings comport with this Court's principle in *Geffrard*: that a "juror is fully entitled to h[is] religious beliefs and may espouse them," but that, in the end, "the court's rules—not h[i]s—apply." 87 F.3d at 452.

Brown also argues that the district court's inquiry "clearly violated" Federal Rule of Evidence 606(b) by inquiring into the "mental processes" of Juror No. 13. Brown's motion at 19. This subsidiary issue, though, will be reviewed only for plain error because Brown did not make this argument below. *See* Doc. 139 at 28–31, 34–36. Indeed, Brown agreed with the court that it should ask the juror both whether he had expressed a religious viewpoint that was guiding his ability to deliberate, and whether he had said that a higher power had told him that Brown was not guilty on all counts. *Id.* at 34–35; *see also id.* at 46 (Brown "d[id]n't have any objection to those questions."). Nor did Brown raise this issue in his motion for a new trial premised on the juror-removal issue. Doc. 187. This plain-error standard presents an even greater

hurdle to release than the other deferential standards that Brown faces on appeal.

The district court's inquiry did not violate Rule 606(b)—clearly, plainly, or otherwise. Indeed, Rule 606(b) does not even apply to inquiries undertaken during deliberations. The Rule is directed at attempts to impeach verdicts; by its own terms it applies only to "an inquiry into the validity of a verdict or indictment." Fed. R. Evid. 606(b)(1); *see Tanner v. United States*, 483 U.S. 107, 121 (1987) ("[Rule] 606(b) is grounded in the common-law rule against admission of jury testimony *to impeach a verdict* and the exception for juror testimony relating to extraneous influences") (emphasis added). The *Tanner* Court thus held that, although Rule 606(b) precluded the use of post-verdict juror testimony about a juror's intoxication, the defendant's right to an unimpaired jury remains protected, in part, because jurors "may report inappropriate juror behavior to the court *before* they render a verdict." 483 U.S.

at 127 (emphasis the Court's).[4] That is what happened here: a juror reported Juror No. 13's inappropriate behavior to the court *before* verdict.[5]

Moreover, given the plain-error standard of review, Brown will bear the burden on appeal of showing controlling authority holding that Rule 606(b) applies to pre-verdict inquiries. *See United States v. Lejarde-Rada,* 319 F.3d 1288, 1291 (11th Cir. 2003) ("there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving" the disputed issue). The absence of any such authority dooms Brown's Rule 606(b) issue from presenting a substantial question.

But even if Rule 606(b) governed, Brown still would not have presented a substantial question that the district court plainly erred. Rule 606(b) prohibits inquiry into "any juror's mental processes concerning the verdict," as Brown notes. Brown's motion at 19–20. But the Rule allows inquiries into whether "extraneous prejudicial information was improperly brought to the jury's

---

[4]The Rule's legislative history bears this out. Although the Rule limits post-verdict inquiry, the Conferees noted "that jurors should be encouraged to be conscientious in promptly reporting to the court misconduct that occurs during jury deliberations." H.R. Conf. Rep. No. 93-1597 at 8 (1974), reprinted in 1974 U.S.C.C.A.N. 7098, 7102.

[5]*State v. DeMille*, 756 P.2d 81, 84 (Utah 1988), on which Brown relies, presents an attempt to impeach a verdict that is subject to Rule 606(b).

attention" or whether "an outside influence was improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2).

Here, the district court carefully limited its inquiry, going so far as to interrupt Juror No. 13's answer because the court "d[id]n't want to hear anything about the deliberations." Doc. 139 at 37. The court instead focused its inquiry to whether the Holy Spirit had told Juror No. 13 that Brown was not guilty on all counts, questions that comported with Rule 606(b)(2)'s exceptions for inquiries into "extraneous prejudicial information" and "outside influence." And Juror No. 13's responses—that he had "*received information* as to what I was told to do" from his "Father in Heaven" and, more specifically, that "the Holy Spirit *told me* that ... Corinne Brown was not guilty on all charges," Doc. 139 at 39, 48–49—satisfied those exceptions. *See, e.g., McNair v. Campbell*, 416 F.3d 1291, 1301, 1307–08 (11th Cir. 2005) (Bible brought into jury room during deliberations was improper extrinsic evidence); *United States v. Venske*, 296 F.3d 1284, 1291 (11th Cir. 2002) (bailiff's statement to jurors that they would not have any trouble convicting defendant if they knew what he knew "clearly involve[s] extrinsic communications that, if properly presented to the district court, necessitate further inquiry"). If the court must inquire when a juror states that he has received information from a bailiff relating to the case, then it surely may inquire when a juror states that he has

20

*received information from the Holy Spirit* directing an *across-the-board not-guilty verdict* in the case.

## Conclusion

Because Brown has failed to establish that the juror-removal issue presents a substantial question, this Court should deny her motion for release pending appeal.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

COLIN P. MCDONELL
Assistant United States Attorney
Appellate Division

By:    *s/ David P. Rhodes*
       DAVID P. RHODES
       Assistant United States Attorney
       Chief, Appellate Division
       Florida Bar No. 438741
       400 N. Tampa St., Ste. 3200
       Tampa, FL 33602
       (813) 274-6000
       david.rhodes@usdoj.gov

21

**Certificate of Compliance with Type-Volume Limitation**

This response, which contains 4942 countable words, complies with Fed.

R. App. P. 27(d)(2)(A) and Fed. R. App. P. 32(a)(5), (6).

## Certificate of Service

I certify that a copy of this response and the notice of electronic filing

was sent by CM/ECF on January 8, 2018, to:

WILLIAM MALLORY KENT
*Counsel for Corrine Brown*

*s/ David P. Rhodes*
DAVID P. RHODES
Assistant United States Attorney

# ATTACHMENT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                      Case No. 3:16-cr-93-J-32JRK

CORRINE BROWN

_____

## ORDER DENYING MOTION FOR RELEASE PENDING APPEAL

While it is customary for a first time, non-violent white collar offender such as Corrine Brown to be allowed to voluntarily surrender to the Bureau of Prisons following sentencing, it is not customary for such an offender to remain free pending appeal. In fact, the law presumes that a person who stands convicted and sentenced will begin service of her sentence unless she can meet certain criteria. For Ms. Brown to be entitled to release pending appeal, the Court must find by clear and convincing evidence that she is not likely to flee or pose a danger to the community if released; the appeal is not for purposes of delay; and the appeal raises a substantial question of law or fact likely to result in reversal or an order for a new trial. See 18 U.S.C. § 3143(b)(1). Ms. Brown has filed a motion explaining why she believes she meets these criteria (Doc. 250). The government agrees that Ms. Brown is unlikely to flee, she poses no danger, and her appeal is not taken for purposes of delay. However, the government does not agree that her appeal raises a substantial question of law or fact (Doc. 254).

The Eleventh Circuit has defined a "substantial question" as

one of more substance than would be necessary to a finding that it was not
frivolous.  It is a "close" question or one that very well could be decided the
other way.  Further, there are no blanket categories for what questions do or
do not constitute "substantial" ones.  Whether a question is "substantial" must
be determined on a case-by-case basis.

United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985) (footnote omitted).  Ms. Brown

bears the burden of establishing that her appeal presents a substantial question of law or

fact.  Id.

On appeal, Ms. Brown intends to argue that the Court erred in denying her motion for

new trial which was based on the Court's dismissal of a juror during deliberations.[1]  The

circumstances which led to the dismissal of the juror and the legal basis for doing so are fully

recounted in the Court's Order denying Ms. Brown's motion for new trial.  See Doc. 200.  In

essence, the Court dismissed a juror who it found was unable to follow the law.  The Court

applied the governing legal standard to the facts, finding beyond a reasonable doubt that

there was no substantial possibility that the juror was able to base his decision only on the

evidence and the law as the Court had instructed.  See id. at 14 (recounting findings made

on the record at Doc. 182 at Tr. 60-61); United States v. Godwin, 765 F.3d 1306, 1316,

1318-19 (11th Cir. 2014); United States v. Abbell, 271 F.3d 1286, 1302-04 (11th Cir. 2001).

The Court therefore dismissed the juror, replaced him with an alternate, and directed that the

jury start the deliberations anew.  After eleven hours of deliberations over two days, the

reconstituted jury returned a verdict finding Ms. Brown guilty of 18 counts involving mail, wire

---

[1]Ms. Brown has not identified any other issue that she intends to argue on appeal.

2

and tax fraud and not guilty on four counts.  The Court then denied Ms. Brown's motion for new trial (Doc. 200), and sentenced her (Doc. 246).

While the issue of whether to replace a deliberating juror comes up relatively infrequently, when it does, there is Eleventh Circuit precedent that guides the Court in its decision-making.  The Court followed that precedent.  Having applied the Eleventh Circuit standard, the Court's factual findings are reviewed under a deferential "clear error" standard, which is "seldom easy to establish."  Godwin, 765 F.3d at 1318.  Thus, while Ms. Brown is free to appeal this issue, she has not presented a "substantial question of law or fact" that would warrant permitting her to remain on release pending appeal.   18 U.S.C. § 3143(b)(1)(B); Giancola, 754 F.2d at 901.

Ms. Brown has been accorded all the consideration she is due, she has not met the standard to remain on release pending appeal, and it is in the interest of justice that she begin serving her sentence.  However, Ms. Brown may seek release pending appeal from the Eleventh Circuit Court of Appeals.  The Court will set a report date that gives Ms. Brown time to do so.  If Ms. Brown chooses to seek relief from the Eleventh Circuit, she must file her motion no later than **December 29, 2017**.[2]

---

[2]The parties should file in this case copies of any filings made in the Eleventh Circuit addressing release pending appeal.  The parties should also file a copy of any Order from the Eleventh Circuit regarding this issue.

3

Accordingly, it is hereby

**ORDERED**:

1.    Defendant Corrine Brown's motion for release pending appeal (Doc. 250) is **denied**.

2.    Ms. Brown shall report to the institution designated by the Bureau of Prisons on **January 29, 2018 by noon** unless the Eleventh Circuit orders otherwise.

**DONE AND ORDERED** at Jacksonville, Florida this 20th day of December, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies to:
A. Tysen Duva, Esq. (Asst. U.S. Attorney)
Michael Coolican, Esq. (Asst. U.S. Attorney)
Eric G. Olshan, Esq. (Asst. U.S. Attorney)
James W. Smith, III, Esq.
Samuel A. Walker, Esq.
United States Probation Office
United States Pretrial Services
United States Marshal Service
Bureau of Prisons
Defendant

4

# ATTACHMENT B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                        Case No. 3:16-cr-93-J-32JRK

CORRINE BROWN

_____

## <u>ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL</u>

This case was tried from April 24 to May 8, 2017, with both sides getting a full opportunity to present their evidence and arguments.   The jury then began deliberating.  On May 10, following a communication from another juror and with both parties' agreement, I questioned Juror No. 13 who told me that from the beginning of deliberations, he had "received information as to what [he] was told to do" from his "Father in Heaven" and that "the Holy Spirit" "told [him] that Corrine Brown was not guilty on all charges."  Doc. 182 at Tr. 41, 51.[1]  Recognizing the sensitivities when religious beliefs are involved, I nevertheless determined that this juror must be excused.  I would have reached the same conclusion had the juror said that the Holy Spirit had told him that Corrine Brown was guilty on all charges.

Under the rules, we could have proceeded with eleven jurors.  However, both sides asked me to seat an alternate so I did.  I received an individual commitment from each juror that they would start deliberations anew. The newly composed twelve

_____

[1]"Tr." cites are to the trial transcript.

member jury then deliberated for more than eleven hours over two days before returning a verdict of guilty on some counts and not guilty on others, bespeaking careful consideration of the evidence.  Then, each juror stood up in open court and announced that this was their "true verdict."

Corrine Brown received a fair trial and a considered verdict from a properly constituted jury.  Her motion for new trial is denied.  A full discussion follows.

## I.    The Pertinent Facts

Former Congresswoman Corrine Brown and a co-defendant, who eventually pled guilty and testified against her, were charged in a twenty-four count indictment alleging a conspiracy to commit mail and wire fraud, aiding and abetting mail and wire fraud, and, as to Corrine Brown only, additional financial disclosure and income tax-related charges.

Jury selection began on April 24, 2017 with a pool of over 100 prospective jurors coming in over the next two days.  On the morning of April 26, United States Magistrate Judge James R. Klindt, who selected the jury by the parties' consent, seated a jury of twelve with four alternates.  All those seated on the jury agreed during questioning that they had no "political, religious, or moral beliefs that would preclude [them] from serving as a fair, impartial juror in this case."  Doc. 169 at Tr. 189.  Each juror also agreed that they had no "religious or moral beliefs" that would preclude them from "sitting in judgment of another person."  Id. at Tr. 190.  Once the jury was

selected, each juror swore to render a true verdict according to the law, evidence and instructions of the Court.  Doc. 171 at Tr. 44-45.  The Court then instructed the jury that their task was to decide the case based solely on the evidence they heard in the courtroom and to ignore all outside opinions.  Id. at Tr. 50.  As the Court then reiterated, "If you didn't get it in this courtroom, you shouldn't have it" because "our whole system depends upon the fact that the case is decided in this courtroom on the evidence in this courtroom and nothing else." Id. at Tr. 50-51.  The Court advised the members of the jury that "every single one of you has [the] responsibility to make sure that that's what happens."  Id. at Tr. 51.

During eight days of trial, the jury heard testimony from 41 witnesses, including the defendant, and the Court admitted 371 exhibits into evidence.  After closing arguments, the Court instructed the jury on the law, including instructions that their decision "must be based only on the evidence presented during the trial" and that the jury "must follow the law as I explain it– even if you do not agree with the law– and you must follow all of my instructions as a whole," and that they "must not single out or disregard any of the Court's instructions on the law."  Doc. 180 at Tr. 124.  The jurors were also instructed that they each must decide the case for themselves, "but only after fully considering the evidence with the other jurors," that they "must discuss the case with one another and try to reach an agreement," and that they should not hesitate to reexamine their opinions and change their mind if they become convinced

3

that they were wrong. Id. at Tr. 143-44. The four alternates were dismissed but were kept together in the courthouse under orders that they continue to follow all the Court's instructions, including that they not discuss the case.

Deliberations began on Monday afternoon, May 8. At 5:00 p.m. the jury retired for the evening, returning the following day where they deliberated without incident from 9:00 a.m. to 5:00 p.m. Later that evening, Juror No. 8 (who was not the foreperson) called the courtroom deputy on her cell phone to report that she and other jurors had "concerns" about Juror No. 13 who, from the beginning of their deliberations, was talking about "Higher Beings" and mentioned the name of the defendant.[2] The courtroom deputy immediately advised Juror No. 8 that she could not discuss the matter with her but would report it to the Judge, which she then did. I communicated with counsel overnight via email, we shared relevant case law,[3] and I convened a hearing at 8:15 a.m. the following morning (Wednesday, May 10) to determine how to proceed.

------

[2]The courtroom deputy provides all jurors with her cell phone number so they can contact her regarding off-hours events such as illness or an accident that may prevent them from reporting for duty as scheduled.

[3]United States v. Abbell, 271 F.3d 1286 (11th Cir. 2001); United States v. Augustin, 661 F.3d 1105 (11th Cir. 2011); United States v. Godwin, 765 F.3d 1306 (11th Cir. 2014); United States v. Geffrard, 87 F.3d 448 (11th Cir. 1996); United States v. Burrous, 147 F.3d 111 (2d Cir. 1998); United States v. Decoud, 456 F.3d 996 (9th Cir. 2006).

4

After some discussion, both sides were firm that the Court needed to question Juror No. 8 in camera to gather more information. The Court agreed.

Members of the public and media were cleared from the courtroom and Juror No. 8 was brought in.[4]  Before making any inquiry, the Court advised her:

> [B]efore I ask you any questions or talk to you, I want to make sure that you know that I am not asking you to, nor should you, state or reveal in anything you say your own opinions or positions about any of the deliberations that you've been having or any of the issues in this case, nor should you disclose or discuss the opinions of any of the other jurors about any of the deliberations that have gone on.  So I want to be clear about that.

Doc. 182 at Tr. 21.  The Court then asked Juror No. 8 to share her concerns as she had recounted them the previous evening, "without talking about the deliberations or anybody else's views or your views."  Id.  Juror No. 8 then offered to give the Court a letter she had written in case she did not receive further communication following her phone call the previous evening.  The Court accepted her letter and shared it with the parties.  The letter, marked as Court Exhibit 1, states:

> Your Honor
>
> With all due respect, I'm a little concerned about a statement made by Juror #13 when we began deliberation.

---

[4]Counsel, the defendant, and court personnel remained in the courtroom.  The remaining seated jurors were held in the Jury Assembly Room; the alternates were brought to their own location in the courthouse so as not to mingle with the seated jurors.  While the Court's inquiry was conducted in camera, the Court later unsealed the transcript of the in camera proceedings.  See Docs. 139, 142, 182.

5

He said "A Higher Being told me Corrine Brown was Not Guilty on all charges".  He later went on to say he "trusted the Holy Ghost".  We all asked that he base his verdict on the evidence provided, the testimony of the witnesses and the laws of the United States court.  Other members of the Jury share my concern.

Thank you,

[name redacted], Juror # 8

Upon further questioning, Juror No. 8 stated that Juror No. 13 made his first comment when the jury "first went into deliberation" and made his second comment a few hours later the same day; Juror No. 13 had not expressed that view again; his comments were not interfering with Juror No. 8's ability to deliberate; and Juror No. 13 appeared to be deliberating.  Doc. 182 at Tr. 23-24.  The Court solicited questions from counsel, which resulted in Juror No. 8 explaining that while Juror No. 13's comments only occurred on the first day, other jurors had subsequently expressed concern in Juror No. 13's presence that his comments might affect his decision. Juror No. 8 also advised that she was acting on her own initiative and the other jurors did not know she had come forward.  Id. at Tr. 23-26.  The Court then excused Juror No. 8 with the admonition that she not share with the other jurors the discussion she had just had with the Court, to which she agreed.

The government commented that Juror No. 13's statements contradicted his agreement during voir dire that he would set aside any religious or philosophical beliefs and further expressed concern that while Juror No. 8 said his comments were

6

not affecting her ability to deliberate, it could be affecting the overall deliberations, particularly since Juror No. 13's comments came at the beginning of deliberations. Counsel for the government suggested questioning the foreperson.  Counsel for the defendant suggested doing nothing further in light of Juror No. 8's statement that her own deliberations were not affected and the lack of evidence that Juror No. 13 was refusing to follow the Court's instructions, but acknowledged that if Juror No. 13 was committed to a particular result notwithstanding the evidence, it would be a concern. Id. at Tr. 28-30.   The Court noted the fine line between persons praying for guidance, which is to be respected, and persons being prevented by a religious view from making a determination based on the evidence.  The Court then asked the parties whether Juror No. 13 should be questioned, commenting that if Juror No. 8 had reported that Juror No. 13 told the jury that the Holy Spirit told him Corrine Brown was guilty of all charges, her counsel likely would want further inquiry.  Her counsel agreed that Juror No. 13 could be questioned to see if he could assure the Court that he would follow the law.  Id. at Tr. 30-33.

    The Court determined to question Juror No. 13.  The parties agreed the Court should first ask him general questions such as whether he was able to follow the instructions given in voir dire about setting aside any religious or moral views that would prevent a decision based on the evidence, and to follow up asking more specific questions, such as whether he had shared contrary views with the jury.  Juror

7

No. 13 was then brought in and told the Court that he remembered the Court asking about political, religious or moral beliefs that would preclude service as a fair and impartial juror and he maintained the response he had previously given that he could serve.  Juror No. 13 said he was not having any difficulty with any religious or moral beliefs interfering with his ability to decide the case on the facts presented and the law as instructed.  <u>Id.</u> at Tr. 39.  The Court then asked if he considered himself to have been deliberating with the other jurors to which he responded that they were going over the individual charges.  The Court interrupted, instructing Juror No. 13 not to reveal anything about the deliberations.  Juror No. 13 responded that he had been "following and listening to what has been presented and making a determination from that, as to what I think and believe."  <u>Id.</u> at Tr. 40.  The Court then asked Juror No. 13 whether he had made any statements to his fellow jurors to the effect that a higher being was guiding him on these decisions or that he was trusting in his religion as a basis for making his decisions.  <u>Id.</u>  Juror No. 13 responded: "I did, yes."  <u>Id.</u>  The following colloquy then took place:

> The Court:       Okay.  Can you tell me, as best you can, what you said?
>
> Juror No. 13:    Absolutely.  I told them that in all of this, in listening to all the information, taking it all down, I listen for the truth, and I know the truth when the truth is spoken.  So I expressed that to them, and how I came to that conclusion.

| The Court: | Okay. And in doing so, have you invoked a higher power or a higher being? I mean, have you used those terms to them in expressing yourself? |
|---|---|
| Juror No. 13: | Absolutely. I told- - I told them that- - that I prayed about this, I have looked at the information, and that I received information as to what I was told to do in relation to what I heard here today- - or this past two weeks. |
| The Court: | Sure. When you say you received information, from what source? I mean, are you saying you received information from- - |
| Juror No. 13: | My Father in Heaven. |
| The Court: | Okay. Is it a fair statement- - I don't want to put words in your mouth. But are you saying that you have prayed about this and that you have received guidance from the Father in Heaven about how you should proceed? |
| Juror No. 13: | Since we've been here, sir. |

Id. at Tr. 40-41.

The Court then asked Juror No. 13 again whether he maintained his view that he had no religious or moral beliefs that precluded him from serving as a fair and impartial juror or that would preclude him from sitting in judgment of another, and

9

whether he was able to base his decision only on the evidence presented during the trial and whether he was following the law as the Court explained it.  Id. at Tr. 41-42. Juror No. 13 responded that he was doing that.  When asked if he saw any inconsistency between that position and his stated religious views, Juror No. 13 responded that he did not, elaborating:  "I followed all the things that you presented. My religious beliefs are going by the testimonies of people given here, which I believe that's what we're supposed to do, and then render a decision on those testimonies, and the evidence presented in the room."  Id. at Tr. 42.

Counsel did not have any additional suggested questions and Juror No. 13 was temporarily excused from the courtroom while the Court discussed the matter with the parties.  The government's view was that although Juror No. 13 maintained that he was following the Court's instructions, he also said he was guided by what he believed a deity told him to do, which was inconsistent with following the law and that, following more record development, he would likely be dismissed and replaced with an alternate.  Counsel for the defendant disagreed, arguing that Juror No. 13 said he was following the law, which was not inconsistent with a person of deep religious faith seeking guidance from God.  Further, Juror No. 8 had reported that her deliberations were not affected.  The defense therefore argued that if Juror No. 13 was removed it would be "simply because he is a man of faith."  Id. at Tr. 46.

10

The Court suggested that it might find clarity by asking Juror No. 13 the direct question posed by Juror No. 8's letter:  Did he tell his fellow jurors that a higher being told him Corrine Brown was not guilty on all charges?  Otherwise, the Court explained, it would be difficult to differentiate between praying for guidance, and being told what to do by a higher authority.  Neither party objected to the Court's suggestion.

Juror No. 13 returned to the courtroom and the following colloquy occurred:

| | |
|---|---|
| The Court: | I want you to understand I am not criticizing you or saying you did anything wrong.  We're just trying to figure some things out here. |
| | So what I want to ask you is a fairly direct question, and that is this:  Did you ever say to your fellow jurors or to a fellow juror during your - - during the time that y'all worked together, when the 12 started, something to this effect, A higher being told me that Corrine Brown was not guilty on all charges?  Did you say something like that?  Did you say that or something like that to any of your fellow jurors? |
| Juror No. 13: | When we were giving why we were - - insight, as far as not guilty or whatever for the first charge, yes. |
| The Court: | Did you say the words, A higher being told me Corrine Brown was not guilty on all charges? |

11

| Juror No. 13: | No. I said the Holy Spirit told me that. |
|---|---|
| The Court: | Okay. And you- - and I don't want to get into your deliberations. But at what point in the deliberations was that? Was it at the beginning? Was it early in the deliberations? When was it? |
| Juror No. 13: | I mentioned it in the very beginning when we were on the first charge. |

Id. at Tr. 50-51. The lawyers convened at sidebar, with the government advising to stop the questioning and the defense suggesting that the Court ask if Juror No. 13 was able to follow the Court's instructions and whether he had been doing so. But the Court declined to ask that, stating it had already done so. Juror No. 13 was temporarily excused.

The government argued that, given Juror No. 13's affirmative response, it was unnecessary to question any other jurors and he should be dismissed and replaced with an alternate. The defense contended this was "nothing more than a circumstance of someone who's a deep man of faith commenting and saying that something he believed beforehand had been reaffirmed by the evidence that he saw." Id. at Tr. 54. It was not, in counsel's view, a circumstance where a juror was planning to vote to acquit no matter what. Id. at 55.

12

The Court took a brief recess and then announced its decision to dismiss Juror

No. 13.  In doing so, the Court recounted the legal standard from the Eleventh Circuit,

which permits dismissal once deliberations have begun only for good cause, which

includes a juror's refusal to follow the law or to follow the Court's instructions.  The

Court explained that because of the danger that a dissenting juror might be excused

simply because he disagreed with other jurors, the Court must only dismiss a

deliberating juror when no substantial possibility exists that the juror is basing his

decision on the sufficiency of the evidence.  The Court recognized that maintaining

sincerely held religious beliefs and praying for guidance are perfectly appropriate and

not grounds to dismiss a juror, and that Juror No. 13 said he felt he was following the

Court's instructions.  But while the Court found Juror No. 13 to be very earnest and

sincere, and that Juror No. 13 likely believed that he was trying to following the

Court's instructions, the Court further observed that by making statements to his

fellow jurors at the beginning of deliberations that he was receiving information from

a higher authority who was directing him as to what verdict he should reach, he was

acting inconsistently with the Court's instruction that the case be decided solely on the

law and the evidence in the case.  Id. at Tr. 56-62.

In judging Juror No. 13's credibility, the Court noted that Juror No. 13 was

initially "hesitant" to explain how his religious views came to the fore during

deliberations, but as questioning continued, he eventually confirmed the actual

13

statement brought to the Court's attention by Juror No. 8 - - that being that the Holy Spirit "told him" that the defendant was not guilty on all charges. Id. at Tr. 60. The Court found that Juror No. 13 not only admitted making the statement, but appeared to continue to believe that a higher power was telling him how he ought to proceed in the deliberations.  Id. at Tr. 61.  The Court found his expressed views to be inconsistent with the duties of a sworn juror because he was not able to deliberate in a way that reaches decision based only on the evidence adduced at trial and the law and instructions given by the Court.  Id.

In announcing its decision, the Court carefully drew a distinction between a juror who is praying for guidance or seeking inspiration, from this situation where the juror actually stated that an outside source "told him" that the defendant was not guilty of all charges. Id. at Tr. 60.  As the Court then stated and now reiterates, "I think that's just an expression that's a bridge too far, consistent with jury service as we know it." Id.  The Court therefore found "no substantial possibility that [Juror No. 13] [was] able to base his decision only on the evidence and the law as the court gave it to him in the instructions and that he [was] using external forces to bring to bear on his decision-making in a way that's inconsistent with his jury service and his oath." Id. at Tr. 61.  The Court held that "based on the evidence before [it]," it made that finding "beyond a reasonable doubt."  Id.

14

While the defendant disagreed with the Court's decision to dismiss Juror No. 13 (and counsel put his objections on the record), both parties agreed that the Court should then seat an alternate instead of proceeding with eleven jurors.  The first alternate joined the remaining eleven jurors in open court where the Court advised them that Juror No. 13 had been excused from service.  The Court instructed the jury that they "should not speculate as to why Juror No. 13 was excused, nor should [they] discuss or reference any statements that Juror No. 13 may have made."  Id. at Tr. 74.  The Court told the jury to "just put Juror No. 13 out of your mind" and asked the jury to accept that the Court found a good reason to excuse him.  Id.  The Court then explained that an alternate would take his place but this meant the jury was required to begin deliberations anew, to wipe their minds of all discussions, tentative verdicts, decisions or opinions and to begin afresh.  The Court asked each juror individually whether they could do this and each stated that they would.  Id. at Tr. 76-77.  The jury then retired to deliberate at 10:30 a.m. on Wednesday, May 10.

Later that morning, the jury had its first question, which the Court answered with the parties' agreement by referring them to particular jury instructions.  That afternoon, the jury had another question, which the Court again answered with the parties' agreement.  They retired for the evening at 5:00 p.m. and returned the following morning, May 11, at 9:00 a.m. to resume their deliberations.  At 11:00, the jury asked to see a transcript of a witness's testimony.  By approximately 1:30 p.m.,

15

the transcript was prepared, but just as the Court was reconvening, the jury announced it had reached a verdict.  Thus, on May 11, after more than eleven hours of fresh deliberation, the jury had completed its task. Their verdict, announced in open court, was that defendant Corrine Brown was guilty of eighteen counts and not guilty of four counts of the indictment.   Each juror stood up in court and confirmed that this was their true verdict.

Corrine Brown has now filed this motion for new trial, arguing that the Court erred in dismissing Juror No. 13, and that the interests of justice require a new trial.[5] See Doc. 187.  The government responded in opposition (Doc. 190) and defendant filed a reply.  See Doc. 196.  The Court heard argument on the motion on August 7, 2017; the record of those proceedings is incorporated by reference.

## II.    The Law and the Court's Decision

Federal Rule of Criminal Procedure 33 provides that, "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Though the "ultimate decision" to grant a new trial falls within the Court's "sound discretion," United States v. Albury, 782 F.3d 1285, 1295 (11th Cir. 2015) (citation omitted), "[m]otions for a new trial . . . are highly disfavored in the Eleventh Circuit and should be granted only with great caution."

---

[5]Defendant also filed a motion for judgment of acquittal (Doc. 188) which is addressed by separate order.  (Doc. 199).

16

United States v. Scrushy, 721 F.3d 1288, 1304 (11th Cir. 2013) (second alteration in original) (quoting United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006)). "[T]he defendant bears the burden of justifying a new trial." Campa, 459 F.3d at 1151 (quotation and citation omitted).

Once a jury has begun their deliberations, the Court may only excuse a juror "for good cause." United States v. Godwin, 765 F.3d 1306, 1316 (11th Cir. 2014) (citing Fed. R. Crim. P. 23(b)(3)). Defendant argues the Court's decision to dismiss Juror No. 13 was not supported by good cause and that the reconstituted jury's verdict was therefore not in the interest of justice, warranting a new trial under Rule 33.

Good cause exists to dismiss a juror "when that juror refuses to apply the law or to follow the court's instructions."[6] United States v. Abbell, 271 F.3d 1286, 1302 (11th Cir. 2001) (citing United States v. Geffrard, 87 F.3d 448, 451-52 (11th Cir. 1996)). See also Godwin, 765 F.3d at 1316. However, as explained in Abbell, the Court must guard against the risk that a juror, who other jurors report is not following the law, is instead simply disagreeing with the majority about the merits of the case.

---

[6]In Abbell, 271 F.3d at 1302, the Court applied the pre-2002 version of Rule 23 which provided for dismissal of a juror upon a finding of "just cause." See Fed. R. Crim. P. 23 advisory committee notes (2002 Amendments) (changing the language of Rule 23 from "just" cause to "the more familiar term" "good" cause, but noting that "[n]o change in substance is intended"). See also United States v. Martinez, 481 F. App'x 604, 608, n.3 (11th Cir. 2012) (commenting that Rule 23's pre-2002 "just" cause standard is no different in substance than the current "good" cause standard).

17

Abbell, 271 F.3d at 1302.  "Thus, judges must be careful not to dismiss jurors too lightly, even in the face of complaints from a majority of the jury."  Id.  "Because of the danger that a dissenting juror might be excused under the mistaken view that the juror is engaging in impermissible nullification . . . a juror should be excused only when no 'substantial possibility' exists that [he] is basing [his] decision on the sufficiency of the evidence."  Id. (citations omitted).  As the Eleventh Circuit further clarified:  "We mean for this standard to be basically a 'beyond reasonable doubt' standard."  Id.

But the Eleventh Circuit recognized that in making this assessment, the trial court "is uniquely situated to make the credibility determinations that must be made in cases like this one[,] where a juror's motivations and intentions are at issue."  Id. at 1303 (citations omitted).  See also Godwin, 765 F.3d at 1318 (holding district judge applied correct standard in considering "whether there was a substantial possibility that the juror who was removed was merely espousing the view that there was insufficient evidence to convict instead of refusing to follow the court's instructions" and that, with the correct standard in mind, district judge, who "was on the scene" and "viewed the jurors as they described the problem" was "uniquely situated to make the credibility determinations that must be made whenever a juror's motivations and intentions are at issue") (citing Abbell, 271 F.3d at 1302-03) (internal quotations omitted).  However, the Court must also tread lightly so as to avoid "invading the secrecy of the jury's deliberations."  United States v. Augustin, 661 F.3d 1105, 1133

18

(11th Cir. 2011).  District judges are cautioned "to err on the side of too little inquiry as opposed to too much." Id. (quoting Abbell, 271 F.3d at 1304, n.20).

The matter with Juror No. 13 was brought to the Court's attention by Juror No. 8 who contacted the courtroom deputy in the evening of the second day of deliberations.  Though mindful of the need to shield a deliberating jury from undue scrutiny, see, e.g., Augustin, 661 F.3d at 1132-33, after considering other options, bearing in mind that the juror was concerned enough to contact the courtroom deputy at night, and at the request of both parties, I questioned Juror No. 8.  Her responses, coupled with the information provided in her note, revealed that, if she was an accurate reporter of the situation, Juror No. 13 was making statements that likely reflected a decision-making process not in accordance with the law.  Although Juror No. 8 stated that Juror No. 13's comments were not affecting her deliberations, the matter warranted further inquiry both because Juror No. 8 reported that other jurors were concerned, and because his remarks were allegedly made at the beginning of deliberations, before the jurors had had an opportunity to confer and discuss the evidence and the governing law.  While the defendant initially argued that I should not inquire further, she later agreed that I should question Juror No. 13 to insure that he was following the Court's instructions.  Although the government suggested that the Court speak to the foreperson first, I determined it would be less intrusive to question Juror No. 13 directly.

19

My colloquy with Juror No. 13 revealed him to be sincere and earnest. Yet, while he reported that he was following the Court's instructions, he readily agreed that he told his fellow jurors at the beginning of their deliberations that he had "received information as to what [he] was told to do in relation to what [he] heard" throughout the trial from his "Father in Heaven." Doc. 182 at Tr. 41. And, while he recalled his assurance during voir dire that he did not have religious beliefs that would preclude him from serving as a fair and impartial juror, he nonetheless stated that "the Holy Spirit" "told" him that "Corrine Brown was not guilty on all charges," and further admitted that he shared that information with his fellow jurors at the very beginning of deliberations when discussing the first charge. Id. at Tr. 51.

"[A] juror is fully entitled to [his] religious beliefs and may espouse them, but in this jury context, where the court's rules– not [the juror's]– apply, it cannot be said that [a] district judge abuse[s] his discretion" by dismissing a juror whose "deeply held religious beliefs" preclude the juror from "reach[ing] a verdict following the judge's instructions as applied to the facts." Geffrard, 87 F.3d at 452. I found that to be the case here. Juror No. 13 had received multiple instructions from the Court on the law and how to evaluate the evidence, yet his religious beliefs compelled him to disregard those instructions and instead follow direction from the "Holy Spirit" to find the defendant "not guilty on all charges." Moreover, he seemed unaware of the inconsistency, reinforcing my belief that he would be unable to follow the Court's

20

instructions even if I again directed him to do so.  Thus, his statement that he was

following my instructions did not convince me that he was able to do so.  See

Augustin, 661 F.3d at 1132 (affirming dismissal of juror whose responses court found

to be "incredible"); United States v. Egbuniwe, 969 F.2d 757, 762 (9th Cir. 1992) ("A

juror's assurance that he or she can render a fair and impartial verdict is not

dispositive.") (citing Murphy v. Florida, 421 U.S. 794, 800 (1975)).

Having reached this conclusion, I saw no need to further interfere in the jury's

deliberations by questioning any of the other jurors, nor did defendant ask me to (and

the government asked me not to).  Cf. Abbell, 271 F.3d at 1304, n.20 (rejecting

argument that trial judge's inquiry "tainted the jury" but cautioning trial judges "to be

careful about invading the secrecy of the jury's deliberations and to err on the side of

too little inquiry as opposed to too much").  Thus, these circumstances were unlike

some others in which a juror denied uttering the statements attributed to him,

compelling the Court to question other jurors to decide the matter.  See, e.g., Godwin,

765 F.3d at 1315, 1318; Abbell, 271 F.3d at 1303-04; United States v. Kemp, No.

CRIM. A. 04-370-02, 2005 WL 1006348 (E.D. Pa. Apr. 28, 2005) (dismissing juror

whose responses court found to be "disingenuous" after other eleven jurors reported

that she was refusing to consider the evidence or follow the court's instructions), aff'd,

500 F.3d 257, 301-06 (3d Cir. 2007) (citing Abbell, with approval).  Here, Juror No. 13

readily admitted he had uttered the asserted statements; thus, inquiry of the other

jurors was not only unnecessary but potentially disruptive.

Defendant claims Juror No. 13's pronouncement was simply his evaluation of the sufficiency of the evidence, casting him as a potential hold-out juror. But this is a mischaracterization of the situation. Juror No. 13 told me he had expressed a conclusion from the beginning of the deliberations and without discussion with his fellow jurors, in violation of the Court's instructions. While Juror No. 8 said Juror No. 13's remarks did not prevent her from deliberating, his statements necessarily had to impact the overall deliberations because Juror No. 13 was telling his fellow jurors that he was basing his verdict on direction apart from those in the Court's instructions.[7]

It is an important aspect of the trial process that "jurors are observable by each other, and may report inappropriate juror behavior to the court <u>before</u> they render a verdict," which is what Juror No. 8 did. <u>Tanner v. United States</u>, 483 U.S. 107, 127 (1987). Juror No. 13 admitted that he announced to his fellow jurors when they began deliberating on the first charge that the Holy Spirit told him that Corrine Brown was not guilty "<u>on all charges</u>." Doc. 182 at Tr. 51 (emphasis added). That characterization is what caused Juror No. 8 to bring the matter to the Court's attention and is what (according to Juror No. 8) caused other jurors to be concerned as well. When Juror No. 13 affirmed this statement upon questioning (and I found that Juror No. 13 would

---

[7] Juror No. 8 was concerned enough that she contacted the courtroom deputy by phone at night, and followed up with a letter. In both of those communications she mentioned that other jurors were concerned about Juror No. 13 as well.

continue in the same vein if permitted to remain), I determined beyond a reasonable

doubt that there was no substantial possibility that he could base his decision on the

sufficiency of the evidence and the Court's instructions.

Contrary to defendant's argument, I am not at all suggesting that persons of

religious faith are unsuitable to serve as jurors.  Indeed, jurors are expected to bring

their life experiences with them when called to sit in judgment of their peers.  Head

v. Hargrave, 105 U.S. 45, 49 (1881).  For many, that includes deeply held religious

beliefs.  But what the law requires is that each juror "lay aside his impression or

opinion and render a verdict based on the evidence presented in court."  Murphy v.

Florida, 421 U.S. 794, 800 (1975).  See United States v. DeJesus, 347 F.3d 500, 510-

11 (3d Cir. 2003) (explaining trial court must distinguish between "religious affiliation

[and] a religion's general tenets" on the one hand "and a specific religious belief" that

"would prevent [a juror] from basing his decision on the evidence and instructions,

even if the belief had a religious backing") (citing United States v. Stafford, 136 F.3d

1109, 1114 (7th Cir. 1998)); United States v. Salvador, 740 F.2d 752, 755 (9th Cir.

1984) (affirming trial court's decision to declare a mistrial where "'religious inspiration'

prevented one juror from considering the evidence").  Had Juror No. 13 simply stated

to his fellow jurors that he was praying for guidance during the deliberations, that

would not have been problematic (and I doubt Juror No. 8 would have brought it to the

Court's attention).  But that's not what happened here.  Juror No.13 announced at the

23

beginning of deliberations that he was following instructions from an outside source,

which is not permitted, even when that source derives from one's own religious

beliefs. See, e.g., Geffrard, 87 F.3d at 451-52 (finding "no miscarriage of justice"

where a deliberating juror was dismissed after writing a letter to the trial judge

explaining, in essence, that her religious beliefs prevented her from sitting in judgment

of the defendants, noting that while the juror was "fully entitled to her religious beliefs,"

the contents of the "letter ma[de] it a certainty that this particular juror could not reach

a verdict following the judge's instructions as applied to the facts").[8]

From my observations, Juror No. 13 was not willfully disobeying the Court's

instructions. Rather, he sincerely believed he had received instructions from an

outside source before deliberations began about what his verdict should be and failed

to appreciate the conflict that presented with the Court's charge. Moreover,

rehabilitation was not an option- - if allowed to remain on the jury, Juror No. 13 would

---

[8]The concurring opinion in the denial of a petition for rehearing en banc in Robinson v. Polk, 444 F.3d 225 (4th Cir. 2006), upon which defendant heavily relies, is not to the contrary. Although the underlying decision affirmed that the presence of a Bible in the jury room was permissible (a position in contravention of Eleventh Circuit authority and that of other circuits, see McNair v. Campbell, 416 F.3d 1291, 1307-08 (11th Cir. 2005); Oliver v. Quarterman, 541 F.3d 329, 336-40 (5th Cir. 2008) (surveying cases); United States v. Lara-Ramirez, 519 F.3d 76, 88 (1st Cir. 2008); Coe v. Bell, 161 F.3d 320, 351 (6th Cir. 1998)), Judge Wilkinson, in commenting that those of religious faith do not leave their beliefs at the courthouse door when called for jury service, cautions that those who rely on the Bible's teachings for guidance must only do so personally and must "avoid discussing it or referencing it as a source of authority for decisionmaking." 444 F.3d at 229. There is no tension between that view and the decision here.

have continued in the same mindset.  I could not ignore this and allow him to act in

accord with this outside instruction.  See Geffrard, 87 F.3d at 452 (affirming decision

to excuse juror after deliberations began, explaining that juror was entitled to her

religious beliefs but was required to deliberate following the judge's instructions);

Oliver v. Quarterman, 541 F.3d 329, 339 (5th Cir. 2008) (commenting on the

"important line" that was crossed when jurors went beyond their own understanding

of law and morality as an aid to discussion and instead followed Bible passages to

reach a decision); United States v. Thomas, 116 F.3d 606, 616 (2d Cir. 1997) ("A

federal judge . . .  may not ignore colorable claims that a juror is acting on the basis

of . . . improper considerations.").  Nor would the result be different, of course, if Juror

No. 13 told me the Holy Spirit had told him that the defendant was guilty of all

charges.[9]

Dismissing a deliberating juror is not done cavalierly.  Quite the opposite.  I

dismissed Juror No. 13 only after finding beyond a reasonable doubt that there was

no substantial possibility he could base his decision on the Court's instructions and

the evidence adduced at trial.  Once I dismissed him, the parties agreed I should

replace him with an alternate.  The reconstituted jury agreed to begin their

consideration anew, deliberating for more than eleven hours over two days before

---

[9]At oral argument, defendant stated that a juror espousing this view would be due to be excused for failing to accord the defendant the presumption of innocence.  At most, this would just provide an additional reason to dismiss the juror.

25

reaching a verdict.  During that time, the jury asked two questions about the law (which the Court answered with agreement of counsel) and requested a transcript of one witness's testimony (which the Court was preparing to provide when the jury announced they had reached a verdict).  The verdict the jury returned- - on what was more than sufficient evidence[10]- - finding Corrine Brown guilty of some counts but not others, was obviously a product of consideration and discernment.  Each juror then affirmed in open court that this was their true verdict.

Corrine Brown is entitled to a fair trial with an impartial jury that reaches a verdict in accordance with the law.  That is what she received.

Accordingly, it is hereby

**ORDERED**:

Corrine Brown's motion for a new trial (Doc. 187) is **denied**.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of August, 2017.

_____
TIMOTHY J. CORRIGAN
United States District Judge

---

[10]See the Court's separate Order denying Defendant's Motion for Judgment of Acquittal.  Doc. 199.

s.
Copies:

A. Tysen Duva, Esq. (Asst. U.S. Attorney)
Michael Coolican, Esq. (Asst. U.S. Attorney)
Eric G. Olshan, Esq. (Asst. U.S. Attorney)
James W. Smith, III, Esq.
Samuel A. Walker, Esq.
Defendant