**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                Case No. 3:16-cr-93-TJC-JRK

CORRINE BROWN

_____

**O R D E R**

On May 11, 2017, a jury rendered its verdict finding defendant Corrine Brown guilty as to eighteen counts of the government's indictment (and not guilty as to four counts). The Court's subsequent judgment included a term of imprisonment, criminal monetary penalties, and other terms not relevant here. Brown appealed, and on September 2, 2021, the Eleventh Circuit Court of Appeals issued its mandate vacating the judgment based on an issue involving a juror, and remanding the case for a new trial. Brown now faces retrial this year on the eighteen remaining counts. At the time of the Eleventh Circuit's reversal, Brown had paid $43,363.50 toward the financial obligations she incurred as part of her sentence.[1] Brown now moves for the return of this

---

[1] Much of Brown's forfeiture and restitution obligations were joint and several with her co-defendant Elias Simmons and co-conspirator Carla Wiley, both of whom pled guilty and have continued to contribute toward their shared obligations. In Wiley's case, the government recently filed a notice of satisfaction as to the forfeiture amount of $654,292.39, in full satisfaction of Wiley's forfeiture obligation. See United States v. Wiley, 3:16-cr-34-TJC-LLL,

money (Doc. 342). The government responded (Doc. 346) and Brown filed a reply (Doc. 349).[2]

The government agrees that $12,301.44 of the funds Brown has already paid should be returned to her. These include the $1,800 paid to the Clerk of Court for Brown's special assessment; $1,655.36 in undistributed restitution funds currently held by the Clerk; and $8,846.08 in restitution collected through the Treasury Offset Program [3] but not yet forwarded to the Clerk for distribution to victims. Thus, it is the remaining $31,062.06 that is at issue.

In arguing that she is entitled to the return of the full $43,363.50, Brown relies on cases which are in a different procedural posture from her case. For example, in Nelson v. Colorado, 137 S.Ct. 1249 (2017), the issue was whether the state was required to refund criminal monetary penalties to defendants who had been acquitted on retrial and those who the government elected not to retry following reversal of convictions—the answer was yes. In so holding, the

---

Doc. 78. Brown and Simmons had an additional $10,000 joint and several forfeiture obligation. See Docs. 243 and 247. The United States stopped all of its collection efforts as to Brown when her conviction was vacated.

[2] Brown filed the motion and reply through her appellate counsel who had been granted permission to make a limited appearance on her behalf following remand. Brown is now represented by court-appointed counsel who will handle all matters going forward, including the retrial.

[3] The Treasury Offset Program intercepts federal (and state) payments to collect delinquent debts owed to federal agencies. See www.fiscal.treasury.gov/TOP. The Clerk reports she received all of Brown's past restitution payments through the Treasury Offset Program.

Supreme Court explained that its ruling (which found Colorado's process for obtaining a refund violated due process) was in the context of a situation where defendants continued to be deprived of property "after a conviction has been reversed or vacated, <u>with no prospect of reprosecution</u>."  <u>Nelson</u>, 137 S. Ct. at 1255 (emphasis added).  Brown also cites <u>Telink, Inc. v. United States</u>, 24 F.3d 42 (9th Cir. 1994), where the defendants (who had pled nolo contendere to an indictment which was later determined to suffer legal infirmities) were seeking the dismissal of their indictment and return of restitution and fines through a petition for writ of error coram nobis.  The Ninth Circuit noted that if the defendants' convictions had been set aside, they would be entitled to an automatic refund of wrongly paid fines, but it affirmed the dismissal of their petition based on laches.  <u>Telink</u>, 24 F.3d at 47.  <u>United States v. Cherry</u>, 330 F.3d 658, 667 (4th Cir. 2003), is likewise inapposite.  There, the court vacated a forfeiture sum that was premised on "fatally flawed" and "defective" embezzlement charges, noting the government had not yet collected the money and did not intend to enforce that portion of the forfeiture judgment.  <u>Cherry</u>, 330 F.3d at 667, 670.  While Brown's conviction has been vacated, in contrast with all of these cases, she is facing imminent retrial on eighteen counts of the original indictment, the legal sufficiency of which has not been challenged.

Additionally, while Brown's motion states the funds that remain at issue were forfeiture proceeds (over which the government would have control), in

3

fact, that money was collected by the U.S. Treasury Department through the Treasury Offset Program and sent to the Clerk of Court for disbursement to 31 separate non-federal victims as restitution. Those victims began receiving restitution payments from Brown through the Clerk beginning in October of 2018. The government provided notice to Brown that it was enrolling her in the Treasury Offset Program and Brown did not object, nor did she seek a stay of any collection during the pendency of her appeal.

The Court found no authority requiring the return of restitution at this juncture. If Brown is acquitted at the retrial, she can renew the motion to return the restitution. At that point, the Court will determine whether efforts can and should be made to seek the return of restitution from the 31 private parties who have received it; doing so now is premature where Brown is set to be tried within months on charges for which, if convicted, she could again be ordered to pay restitution.[4]  For now, therefore, the motion is denied as to her request for the return of money already disbursed as restitution to victims.[5]

---

[4] Brown stated the funds were needed now so she could hire a lawyer, but the amount collected thus far would be insufficient to retain private counsel to handle a case of this complexity. Moreover, the Court has since appointed two well qualified lawyers to represent Brown under the court's Criminal Justice Act plan.

[5] At this point, the Court takes no position as to whether the government properly pursued the collection of restitution in the manner it did. There will be opportunity to address this at the conclusion of the case.

4

Accordingly, it is hereby

**ORDERED**:

Brown's Motion for Return of Money (Doc. 342) is **granted in part** to the extent that the Clerk and government shall initiate the return of $12,301.44 to Brown (which sum includes the $1,800 special assessment and $1,655.36 in undistributed restitution now held by the Clerk, and $8,846.08 the U.S. Attorney has requested from the Treasury Offset Program).[6]  The motion is otherwise **denied without prejudice** to renewal as appropriate.

**DONE AND ORDERED** in Jacksonville, Florida this 18th day of January, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:
A. Tysen Duva, AUSA
Michael Coolican, AUSA
Jillian M. Jewell, AUSA
Michelle Parikh, DOJ
Sandra K. Young, Esq.
Richard C. Komando, Esq.
Finance
U.S. Probation
Defendant

---

[6] Brown's counsel shall confer with the government and the Clerk as to how best to remit these funds to Brown.